Parker, executor, *vs.* The Waycross & Florida Railroad Company, and *vice versa.*

ers, §291; 23 Fed. Rep. 695; 17 Wall. 610; 2 Phil. 344; 78 Mo. 482; 101 U. S. 214; 91 *Id.* 46, 56, 65, 95; 95 *Id.* 630; 127 *Id.* 493.

Judgment reversed.

PARKER, executor, *vs.* THE WAYCROSS & FLORIDA RAILROAD COMPANY, and *vice versa.**

1. Where exceptions to an auditor's report were submitted to the decision of the presiding judge, who ruled in writing upon all the questions raised thereby, and a bill of exceptions to his ruling assigns error upon "each and every of the decisions and rulings of said court . . . herein above set forth, . . . and for ground of exception refers to the said exceptions as they are now of file with said report as part of the record of said case"; but no exception was taken to the final judgment of the court finding a certain amount against the other party (who thereupon filed a cross-bill of exceptions), the first named bill of exceptions will be entertained, the judgment rendered being the logical sequence of the propositions attacked thereby.

2. In an action of trespass for entering upon land and cutting and carrying away timber, where no grant from the State was introduced conveying one lot of the land, and there was no evidence that the plaintiff was ever in possession of it, and two of the plaintiff's deeds thereto were attacked as forgeries, to sustain which attack two certificates from the executive department were introduced, showing that the persons purporting to have attested the deeds as justices of the peace were not in commission at the date of execution, and there was nothing to rebut the presumption raised by these certificates, a finding against the plaintiff's title to that lot of land was correct. None of the cross-ties for which plaintiff recovered came from this lot.

(a) It is not required that such certificate, in order to create such presumption, should show that there was no such person in the State in commission as justice of the peace when the deed was executed.

(b) The genuineness of a deed whether "ancient or modern" may be challenged.

(c) Though a plaintiff may recover in ejectment, as against a mere trespasser, upon prior possession alone, and while possession under a deed without more has been held sufficient to make out a

*This case was argued at the last term, and the decision reserved. BLECKLEY, C. J., being disqualified, Judge MARSHALL J. CLARKE, of the Atlanta circuit, was designated to preside in his stead.

*prima facie* case, rendering it necessary to show that the defendant's possession was not that of a trespasser, yet it has not been held that one who merely has a deed and is not in possession can recover for trespasses on the land or cast the burden of proof upon his adversary.

(d) A person holding a forged deed can recover thereon for purposes of title only where it is accompanied with actual adverse possession, commenced without notice and in good faith.

3. A deed in the plaintiff's possession from his testator to the defendant, covering a strip of the disputed lot for a railroad right of way, does not estop the defendant from denying the title of the plaintiff to such strip.

4. The evidence sustains the finding of the judge as to the number of cross-ties from plaintiff's land the defendant received.

5. Where, under the contract between the defendant and the person who furnished the timber, cross-ties, etc., the ties were to be distributed on its right of way, to be used in constructing its track, while the other timbers were not to belong to it until they had become part of its road-bed and so accepted, though the plaintiff might recover for the ties he could not for the other timbers. The evidence supports this distinction, as it does also the finding of the judge as to the quantity of "crib" and bridge timbers that went into defendant's possession.

6. The defendant was not liable for acts of trespass committed by employés of sub-contractors of the person who contracted with defendant to supply the timbers in question; there being no evidence that the defendant ratified the trespasses.

7. Where the sub-contractors entered upon plaintiff's land without authority, cut down trees, turned them into cross-ties, delivered them to the principal contractor and were paid, and the principal contractor delivered them to defendant under his agreement, the plaintiff was entitled to recover of the defendant the value of the cross-ties when delivered to it, although the accession of value which the timber received in being made into cross-ties was derived from the labor of the trespassers.

February 20, 1889.

Practice in Supreme Court.   Title.   Deeds.   Trespass.   Forgery.   Evidence.   Presumptions.   Estoppel. Actions.   Master and servant.   Damages.   Before Judge ATKINSON.   Ware superior court.   April term, 1887.

Reported in the decision.

S. C. ELAM, E. A. HAWKINS and R. F. LYON, for plaintiff.

CHISHOLM & ERWIN, S. T. KINGSBERRY, L. A. WILSON and J. C. NICHOLLS, for defendant.

CLARKE, Judge.

W. W. Parker, as executor of William B. Parker, brought a suit to the November term, 1882, of Ware superior court, against the Waycross & Florida Railroad Company. In the declaration there were two counts, one in trover and the other trespass. In the former the plaintiff sues the defendant in the usual form of such an action for a large quantity of pine-logs " suitable and valuable for cross-ties and cribbing and bridge timbers." In the latter count the plaintiff alleges that, on July 1st, 1880, he owned and was in possession of lots of land numbers 256, 297, 298, 299, 300 and 301 in the 8th district of Ware county, and that the defendant, with force and arms, wrongfully entered upon said land and cut down and carried away twenty thousand trees of the value of one dollar each.

The case was referred, by consent to an auditor. The auditor made a report which was filed October 20th, 1883. Both parties excepted to the report. While these exceptions were pending, the court, at the spring term, 1885, allowed the plaintiff, over the defendant's objection, to amend his declaration so as to strike therefrom in the description of the lots of land the number 256 and substitute the number 250. To this action of the court the defendant filed a bill of exceptions *pendente lite*. After this amendment had been made, the court, on plaintiff's motion, and over the defendant's objection, referred the case back to the auditor. The defendant again filed a bill of exceptions *pendente lite*.

The auditor filed a supplemental report on November 2d, 1885. The plaintiff again excepted. The defendant filed no further exceptions; this report, as did the former one, finding defendant to be under no liability to the plaintiff. The whole case, in this condition, was submitted to the decision of the judge alone, upon the evidence used in the hearing before the auditor. He wrote an opinion in which he discussed and ruled upon all the questions of law, as well as fact, raised by the exceptions, and as a result, overruled all the plaintiff's exceptions save the third one of the series filed April 7th, 1887. It was partially sustained, and under the view which the judge took of it he rendered a judgment for the plaintiff against the defendant for $129, with interest from October 1st, 1880. Both parties sued out bills of exceptions. The defendant assigned as error the allowance by the court of the amendment to the plaintiff's declaration, the second reference to the auditor, and the rendition by the court of a judgment against the defendant for any amount.

The plaintiff's bill of exceptions states seven distinct propositions, announced by the judge in the opinion which resulted in the above judgment, and then follows these propositions with an assignment of error expressed thus: "To each and every of the decisions and rulings of said court from one to seven inclusive, herein above set forth, the plaintiff then and there excepted, now excepts and assigns the same, each and all, as error, and for ground of exception refers to the said exceptions as they are now of file with said report as part of the record of said case." There was no exception taken to the final judgment rendered by the court against the defendant. When the case came on to be heard in this court, the defendant in error moved to dismiss the plaintiff's bill of exceptions on the ground that he did not ex-

cept to such judgment. The court reserving its decision on the motion, directed the case to be argued at large, and it was accordingly done. The first question, therefore, with which we have to deal in this opinion, is the one presented by this motion.

1. We think this court should entertain the bill of exceptions. The judgment rendered is the logical sequence of the propositions which the plaintiff attacks, and if the judge had thought otherwise than as indicated by them, it is clear that he could not have reached the conclusion which he, did. If these propositions, therefore, are unsound, they constitute distinct and substantial error against the plaintiff, and he may well ask to have them here reviewed.

2. The first exception taken by the plaintiff is, that "the said court in said decision, as it is of record, decided and ruled as follows: 'In the absence of statutory title by prescription or of an actual possession, it is necessary for the plaintiff to exhibit a grant from the State in order to sustain his claim of title; and, further, that there is nothing in the record to rebut the presumption of forgery of two of said deeds raised by the evidence of defendants.'" To render this exception intelligible, an extract from the opinion of Judge ATKINSON is here introduced:

"Upon the argument of the cause, all objection by defendants' counsel to plaintiff's title was abandoned, except as to lot 250, and as to this lot only is there any controversy as to title. Touching this lot, the auditor reports that no grant was introduced showing that the State had ever parted with its title, and no such paper appears in the auditor's report of the evidence; and there is no evidence that the plaintiff ever was in possession of the land in question. In the absence of statutory title by prescription or of an actual possession, it is necessary for the plaintiff to exhibit a grant from the State in order to sustain his claim of title. Two of the plaintiff's deeds to this land were attacked as forgeries, and the defendant submitted, to sustain the proposition, two certificates from the executive department, showing that the persons purporting to have signed these deeds as witnesses in the

official capacity of justice of the peace were not in commission at the date of their execution. There is nothing in the record to rebut the presumption raised by these certificates; and upon this evidence, the auditor reported adversely to the plaintiff's claim of title. This finding is unquestionably correct."

There are certainly some purposes for which one's right to land may be established without showing title derived from the State by a due succession of conveyances or supported by prescription. A plaintiff may, for instance, recover in ejectment as against a mere trespasser upon prior possession alone. Code, §3366; 63 *Ga.* 538; 54 *Ga.* 610; 53 *Ga.* 454; 11 *Ga.* 119; 5 *Ga.* 39. Again, it has been held that possession under a deed without more was sufficient to make out a *prima facie* case, so as to render it necessary for the defendant to show that his possession was not that of a trespasser. 53 *Ga.* 688. We know of no authority, however, for the doctrine that one who merely has a deed from another and is not in possession, can either recover for trespasses committed on the land embraced in the deed or cast the burden of proof upon his adversary. The argument of the counsel for the plaintiff in error to this effect is not sustained by either of the cases cited by him. In the one in the 32 *Ga.* 656, it is simply held that a plaintiff, having a good prescriptive title to land, may recover in ejectment without going into the question whether any grant was ever issued. The other decision referred to in the same volume, p. 524, is, in substance, that where a grant has been issued by the State and is relied on in ejectment by the plaintiff, the defendant cannot attack it on the ground that it was procured by fraud, unless he shows that he had in the land some interest which was affected by the grant.

The plaintiff in this case could not recover except by showing that the land from which the cross-ties were taken was his, (40 *Ga.* 479,) and we think the decision

of the court in relation to his title is correct. It may be proper to add that none of the cross-ties for which plaintiff recovered came from this lot. We likewise agree with the judge in ruling that a presumption arises that a deed is forged where it is shown by certificates from the executive department that, at the date of its execution, there was not in commission as justice of the peace, in the county where it purports to have made, any such person as the one who attested it in that official capacity. 75 *Ga.* 427, 428; 60 *Ga.* 482; 30 *Ga.* 619, 624; 5 *Ga.* 6. It was urged by counsel for plaintiff in error that such certificates, in order to create this presumption, should show that there was no such person in the State in commission as a justice of the peace when the deed was executed. The case just cited from the 30 *Ga.* is to the contrary, and distinctly so. It was further insisted by the same counsel that an ancient deed cannot be attacked for forgery, and that these deeds were ancient. It has been decided by this court that the genuineness of a deed whether " ancient or modern " may be challenged. 75 *Ga.* 490, 493.

It was still further contended on the plaintiff's behalf, that he was protected from such inquiry because he took the deeds without notice of the forgery. A person holding a forged deed can rely upon the same for the purposes of title only where it is accompanied with actual adverse possession, commenced without notice and in good faith. Code, §2683.

3. Plaintiff introduced in evidence from his own possession a deed dated May 24, 1882, from his testator to the defendant, covering a strip of the disputed lot, which strip became a part of its right of way. The plaintiff maintains that this conveyance estops the defendant from denying the title of the plaintiff to so much of the lot as it embraces. The judge ruled to the contrary,

and the second exception relates to this point. In our opinion, the conclusion reached by the court is correct. 14 *Ga.* 313, 315; Big. on Estoppel, (2d Ed.) 251, 258, 259, 260, and notes.

4. The third exception is, that the judge erred in determining that the defendant received only 4,300 crossties that came from plaintiff's land. He says that 7,833 is the true number. We have examined the evidence carefully and think that it sustains the finding.

5. The fourth exception is that the judge erred as to the quantity of "crib" and bridge timbers which came into the defendant's possession from plaintiff's land. It is unnecessary to consider this exception, under the view next to be presented. It may be remarked, however, that the evidence appears to support the decision.

The fifth exception assigns as error the judgment of the court that the rights of the plaintiff are on a different footing as to the timbers just mentioned from what they are as to cross-ties, and that, whereas he may recover from defendant for the latter, he cannot for the former. Under the contract between the defendant and Mr. Walthour, the cross-ties as such were to be distributed at convenient points along its right of way, to be afterwards used by it in the construction of the track, while the other timbers were not to be defendant's until they had become a part of its road-bed and so accepted. The distinction taken by the judge is one founded, therefore, in the evidence, and his decision as to its effect is right.

6. The judge held that the defendant was not liable for acts of trespass committed on plaintiff's land by the employés of certain sub-contractors under Walthour, who had contracted with the defendant to supply the timbers in question. Plaintiff says this ruling is erroneous. As to the facts, there is no room for serious

controversy. They are undoubtedly proved as found. The law is plain. "The employer is not responsible for torts committed by his employé when the latter exercises an independent business and in it is not subject to the immediate direction and control of the employer." There is no evidence that the defendant ratified the trespasses. Code §2962. See also *Harrison vs. Kiser,* 79 *Ga.* 588.

7. The last exception relates to the amount of the recovery. The plaintiff says that the judge erred as to the measure of damages, holding that the plaintiff was entitled only to the "stumpage" value of the timber made into cross-ties, whereas, as plaintiff insists, the true measure is the value of the cross-ties themselves as such. We are constrained to dissent from the view taken at this point in the excellent opinion of the circuit judge. These are the facts. Mr. Walthour contracted to furnish these cross-ties to the defendant. He made a subcontract for them with Dixon and Cay. They entered upon plaintiff's land without any authority, cut down trees, turned them into cross-ties, delivered them to Mr. Walthour and were paid. He delivered them to defendant under his agreement. It is to be noted that the accession of value which the timber received in being made into cross-ties was derived from the labor of trespassers. The law as to the measure of damages upon this state of facts is properly stated, we think, in the case of the Wooden Ware Company *vs.* United States, 106 U. S. 432. The United States sued the Wooden Ware Company for two hundred and fifty-two cords of ash timber, cut and removed from "that part of the public lands known as the reservation of the Oneida tribe of Indians in the State of Wisconsin. This timber was knowingly and wrongfully taken from the land by the Indians and carried by them some distance to the town

of Depere and there sold to the defendant, which was not chargeable with any intentional wrong or misconduct or bad faith in the purchase. The timber on the ground after it was felled was worth twenty-five cents per cord or $60.70 for the whole, and at the town of Depere where defendant bought and received it, three dollars and fifty cents per cord, or $850.00 for the whole quantity." The Supreme Court of the United States, in fixing the measure of damages in the case, holds that, "Where the plaintiff, in an action for timber cut and carried away from his land, recovers damages, the rule for assessing them against the defendant is:

"1. Where he is a wilful trespasser, the full value of the property at the time and place of demand or suit brought, with no deduction for his labor and expense.

"2. Where he is an unintentional or mistaken trespasser or an innocent vendee from such trespasser, the value at the time of conversion, less the amount which he and his vendor have added to its value.

"3. Where he is a purchaser without notice of wrong from a wilful trespasser, the value at the time of such purchase."

This opinion is well sustained by the reasoning of the court. From our own research, we find that the first proposition announced is supported by the following cases: Barton Coal Company *vs.* Cox, 39 Md. 1; Franklin Coal Company *vs.* McMillan, 49 Md. 549; Bennett *vs.* Thompson, 13 Ired. 146; Winchester *vs.* Craig, 33 Mich. 205; Nesbitt *vs.* St. Paul Lumber Company, 21 Minn. 491; Gray *vs.* Parker *et al.*, 38 Mo. 160; Heard *vs.* James, 49 Miss. 239; Ellis *vs.* Wire, 33 Ind. 127; the second proposition by the following cases: Forsuth *vs.* Wells, 41 Penn. 291; The Barton Coal Company *vs.* Cox, 39 Md. 1; Franklin Coal Company *vs.* McMillan, 49 Md. 549; Bennett *vs.* Thompson, 13 Ired. 146: Win-

chester *vs.* Craig, 33 Mich. 205 ; Ward *vs.* Carson River Coal Company, 13 Nev. 44; Waters *vs.* Stevenson, 13 Nev. 157 ; Gray *vs.* Parker *et al.*, 33 Mo. 160 ; Heard *vs.* James, 49 Miss. 236 ; Goller *vs.* Fett, 30 Cal. 481; Herdic *vs.* Young, 55 Penn. 176; Beede *vs.* Lamprey, 15 Atlantic Reporter, 133 ; and the third proposition by the case of Nesbitt *vs.* St. Paul Lumber Company, 21 Minn. 491.

Upon the authorities just cited, we think the plaintiff was entitled to recover of the defendant the value of the cross-ties when delivered to it, and we direct that the judgment of the court below be modified to conform to this view.

Judgment affirmed, with direction.