1372. MILLTOWN LUMBER COMPANY *v.* CARTER.

1. Where timber is wrongfully cut from land and carried away, the owner has an election of remedies. He may treat the transaction as an injury to the realty, and sue in trespass quare clausum fregit; or, since the trees, so soon as severed, become personalty, he may maintain trover, or any other form of action appropriate to the recovering of the possession of personalty, or to the recovery of damages for the injury to or conversion of that class of property; or he may waive the tort and sue in implied assumpsit for the value of the timber.

(a) To cut timber, take it away, and manufacture it into lumber is a continuing conversion.

(b) Where a petition alleges ownership of timber in the plaintiff, a conversion of it by the defendant, and measure of damages peculiarly appropriate to a trover case, the plaintiff's suit will be construed to be an action of trover.

2. Where timber is wrongfully cut from the land and carried away, the measure of damage varies according to the nature of the remedy employed to redress the injury.

(a) If the owner sues upon the theory of a trespass to the realty, the measure of damage is the diminution in the market value of the real estate, unless the value of the trees at the time and place of their being felled, plus any incidental damage to the land itself, exceeds the diminution in the market value of the realty; in which event the higher measure is allowable.

(b) If the owner elects to sue in trover for the conversion of the severed logs, or of the product into which they have been manufactured, he may recover the specific property (if it is still in the defendant's possession), or may recover damages for its conversion, at his election.

(c) An owner does not lose title to a crude article by reason of the fact that a wrong-doer who has taken it from his possession has improved, refined, or manufactured it, unless such a radical mutation has taken place that title by accession has arisen. However, if the owner brings trover to recover an article which was taken from him in a crude state, and improved by labor and expense placed upon it by the person taking it, the defendant is entitled to plead as a set-off, and to recover, ex æquo et bono, the value of his labor and expense by which the property has been enhanced, provided he makes it appear that his trespass in taking the property was innocent or inadvertent, and was not committed wilfully or in bad faith.

(d) The owner may trace his property so taken into the hands of others, who have purchased it from the original trespasser, and may treat the dominion exercised by the purchaser over the property as a conversion. If he brings trover against a third person holding under the initial wrong-doer, he may recover; but the defendant may set off, against the recovery, any sum which he (if his possession be innocent) has expended in enhancing the value of the property; also any sum which his predecessor in title likewise has expended, if his predecessor's trespass was also innocent.

(e) Section 3918 of the Civil Code, which relates to the measure of damages "where plaintiff recovers for timber cut and carried away," is but a codification of a particular phase of the general principles announced above. It is not applicable to actions of trespass to realty. It relates solely to trover suits brought for timber or products manufactured from it; though it incidentally states the correct measure of damages where the plaintiff brings his action, not in trover, but in some other form of trespass to personalty.

3. In actions of trespass to realty, the fact that the trespass was wilful is material only for the purpose of obtaining punitive damages, and the burden of proving the wilfulness is on the plaintiff; but where the plaintiff brings trover for the recovery of an article severed from the realty and converted by the defendant, he is entitled to recover the article or its full value as damages, even though it has been greatly improved at the expense of the defendant, unless the latter shows that the trespass was not wilful, so as to entitle him to a set-off, under the principles stated in the foregoing headnotes.

4. In trover for timber cut from the plaintiff's land and carried away, the gist of the action is the wrongful conversion. The plaintiff is not required to allege whether the trespass was wilful or innocent. If he

alleges a wilful trespass, his suit does not fail, if it develops that the trespass was inadvertent or in good faith, though this fact may give the defendant the right of set-off.

(a) If the defendant claims a reduction of the damages by reason of his good faith in committing the conversion, the burden is on him to show the facts necessary to the establishment of this defense, including proof as to the value that has been added to the property by the expenditure of labor and money put upon it by him.

(b) Until some other basis for recovery appears, the plaintiff whose property has been converted by the defendant is entitled to a verdict for the full value of the property at the date of the conversion, with interest, or, at his election, for "the highest amount he can prove between the time of the conversion and the trial," without the addition of interest.

5. In the light of the facts appearing in the case, none of the errors complained of were prejudicial to the excepting party.

Action for damages, from city court of Nashville—Judge Peeples. August 17, 1908.

Argued November 23,—Decided December 22, 1908.

Carter sued the lumber company, alleging, that he was the owner of certain lots of land in Lowndes county; that he sold to one Gress all the pine timber suitable for sawmill purposes and measuring 15 inches or more in diameter at a point two feet above the ground; that Gress transferred this lease to the defendant, and that under this authority, and no other, the defendant entered upon the land and cut the timber, and, in violation of the terms of the lease, cut and carried away and manufactured into lumber a specified number of trees, of less size than that designated in the contract; that the lumber manufactured from these trees amounted to 100,-000 feet, of the market value of $15 per thousand; that the trespass upon the timber was wilful; that the defendant was therefore liable to the plaintiff in the sum of $1,500, the market value of the lumber so wilfully cut from his land. The defendant admitted the nature of the lease by which it cut the trees from the land in question, and the fact that all the trees it cut from the land were manufactured into lumber, but denied that it had cut any trees of less size than that specified in the lease. It further set up that the plaintiff was indebted to it in a named sum, because he had, pending the lease, wilfully and intentionally cut a number of trees more than fifteen inches in diameter, and had made them into cross-ties; and it prayed set-off and judgment against him for the value of the cross-ties. The plaintiff's testimony went to show

that the defendant's servants had cut and had continued to cut, over his protest, trees less than the size specified. He also presented definite proof as to how many of these trees there were, and as to the value of the lumber manufactured from them. The defendant, on the other hand, introduced testimony to controvert that of the plaintiff, also to show that if any trees were cut under size, it was by inadvertence; also to show that the plaintiff had cut and manufactured into cross-ties a certain number of the trees which belonged to the defendant, under the lease. The plaintiff, in turn, introduced testimony to show that he had not cut any trees. oversize, and that if he did so, it was by inadvertence. The jury found for the plaintiff $700. The defendant brings the case to this court for review, on a number of exceptions.

*Cranford & Wilcox,* for plaintiff in error.

*G. A. Whitaker, Denmark & Griffin,* contra.

POWELL, J. (After stating the foregoing facts.)

1. A landowner whose standing timber has been cut and carried away by a trespasser has his election among a number of remedies for the redressing of the injury. There is, of course, the basis for an action of trespass quare clausum fregit, a remedy that redresses the wrong as an injury to the realty. However, the trees so soon as severed become personalty. The landowner does not lose title to them by their being cut and carried away, or by their being sold by the trespasser to third persons. Not only the trees and the logs cut therefrom are his, but they remain so although they are manufactured into cross-ties, lumber, boxes, or even toothpicks. Hence the act of the wrong-doer may also be considered as a trespass upon personalty. The cutting and removing of the trees and the manufacturing of the timber is a conversion. Not only the original trespasser, but purchasers from him, and all others who exercise dominion over the logs, lumber, or manufactured product, are guilty of converting the owner's personalty. Hence the owner may sue the original wrong-doer for the trespass to the personalty; or he may maintain against him, or his vendees or successors to the wrongful possession of the property, a suit in trover, bail-trover, or any other form of action appropriate to the recovery of the possession of chattels or to the obtaining of damages for their unlawful conversion; or he may waive the tort and sue on an implied assumpsit for the market price of the property

so converted. Compare Bailey *v.* Chicago R. Co., 3 S. D. 531 (54 N. W. 596, 19 L. R. A. 653, and cases cited in the note). Suit by trover is adequate, according to the practice in this State, to give the same form of relief as detinue and replevin afford in other jurisdictions, and these two forms of actions are not employed in our practice. The plaintiff by trover or bail-trover may recover the specific chattel, or damages for its conversion or detention, and has the right to take an alternative verdict at his election. Not only is an election of remedies open to the wronged landowner, but, except so far as the rule against joining actions ex delicto with actions ex contractu prohibits, he may in the same suit set up the transaction in various counts, charging it in one count to be a trespass to the realty, in another to be a trespass to the personalty, in another to be a conversion of the personalty, etc. Of course, the obtaining of satisfaction by any one of these remedies precludes further proceedings upon the cause of action.

In this State the essential allegations of a trover suit are, ownership of the chattel by the plaintiff, conversion by the defendant, and its value, and, if hire be claimed, the value of that. The present petition sets up all these allegations, and prays a judgment for the value of the property. The measure of damages stated is not appropriate to an action of trespass quare clausum fregit, but is appropriate to a trover suit. In trover the plaintiff may elect in advance not to take the specific property, and may maintain the action for the damages laid as the value of the property. We therefore construe the present action to be a suit in trover.

2. Where a plaintiff whose timber has been wrongfully cut and carried away sues on the theory of a trespass committed upon the realty, the measure of damages is stated by some courts to be the value of the timber as it stood, plus any incidental injury to the land; by others it is stated to be the diminution in the market value of the real estate. Compare Coal Creek Co. *v.* Moses, 15 Lea (Tenn.), 300 (54 Am. R. 415), with Bailey *v.* Chicago R. Co., supra. In this State it was said in an early decision (*Smith* v. *Gonder*, 22 *Ga.* 353) that the measure of damages in such a case was "the value of the trees at the time when they were felled and at the place where they were felled." As no incidental injury to the realty was shown in the case just mentioned, we do not think it was the intention of the court to exclude a recovery of damages

for this additional injury, if it should be shown in a particular case. We think that the true rule and a reconciliation of the authorities on the subject is that the measure of damages is the diminution in the market value of the realty, unless the value of the trees at the time and place of their being felled, plus the incidental damage to the realty, exceeds the diminution in market value of the land; in which event the plaintiff is entitled to claim the higher measure. See *Central R. Co.* v. *Murray*, 93 *Ga.* 256 (20 S. E. 129) ; *L. & N. R. Co.* v. *Kohlruss*, 124 *Ga.* 250 (52 S. E. 166) ; *Western & A. R. Co.* v. *Tate*, 129 *Ga.* 531 (59 S. E. 266). In *Smith* v. *Gonder*, supra, the value of the felled timber, according to the figures appearing in the proof, was greater than the total value of the land before the trees were cut.

If the plaintiff elects to sue in trover for the conversion of the trees after they became personalty by being severed, the measure of his damages is altogether different. The plaintiff is not permitted to show how much the land has been damaged. *Coody* v. *Gress Lumber Co.*, 82 *Ga.* 794 (10 S. E. 218). Trover, as we employ it, looks to the recovery of the specific property, or its equivalent in money; it is the remedy by which the law restores the possession of the chattel to the owner, or, failing in this, gives damages in lieu of the possession. Until the property goes through such mutations that a change of title occurs, through what is called accession, the owner whose possession has been violated still owns it, and is entitled to have it restored to him. This right to claim restitution or damages, based on the amount of the loss that results from a failure to restore, exists against the initial wrong-doer, and also against all others who have succeeded him in his tortious possession of or dominion over the property.

Crude articles wrongfully taken are often enhanced in value by improvements put upon them by the trespasser or by some person to whom he has sold them. In such cases the owner's right of restitution or damage is not wholly unqualified. The courts long ago saw that to allow the owner to recover a chattel in its improved condition from one who, innocently or inadvertently mistaking it for his own, had, after converting it, greatly increased its value by labor and expense placed upon it, was a violation of one of the law's cardinal doctrines,—namely, that as against a defendant whose wrong was not accompanied by mala fides, or other cause

for the imposition of punitive damages, a plaintiff should be allowed only such damages as would justly compensate his actual loss. Toward a wilful wrong-doer the law feels no such tenderness. Hence sprang the doctrine that while the owner of the chattel might sue in trover any one who had been guilty of converting it, and, notwithstanding that valuable improvements had been placed upon it, might recover the property or its enhanced value, the defendant in such an action might set off, ex æquo et bono, the sum by him expended in enhancing its value, if it appeared that he had converted the property innocently and without bad faith. If the plaintiff should ask for restitution of the property, his recovery must be conditioned on his repaying to the defendant the amount that its value has been enhanced by the labor or money expended on it by the defendant. If he should ask for damages, instead of restitution, the amount of the recovery must be diminished by the sum to which the defendant is thus entitled. The right of set-off, springing as it does ex æquo et bono, must never be enforced to the extent of preventing the plaintiff from recovering what would be the value of his chattel if it had not been improved. The right of set-off exists only so far as the enhancement of value is concerned.

If the defendant is not the original trespasser, but has innocently bought from a trespasser, this same quasi-equitable principle entitles him to a set-off of such enhancement in value as he himself has added to the property. Whether he shall be allowed to set off also enhancements made by his vendor depends upon the latter's good faith; for it will be seen that while the defendant in purchasing the article in its improved condition presumably has included in the price, and thus has repaid the original trespasser, all sums by him expended, so as to get a right of subrogation, as it were, yet if the original trespasser, by reason of his bad faith, was not entitled to set-off, he had nothing in the nature of an equity which he could sell. In other words, if the seller's possession was in bad faith the plaintiff, at the time the purchaser obtained the property, had as to it a good title and an unqualified right of restitution, subject to no counter-right of set-off; and, therefore, the purchaser's set-off could only include that which had come about subsequently. We have not cited the great array of authority on which these propositions are based, but any one interested in the

subject will find it fully discussed and developed in the notes to
the case of Baker *v.* Wheeler (8 Wend. 505); as reported in 24 Am.
Dec. 66, and to the case of Bailey *v.* R. Co., as reported in 19 L.
R. A. 653.

Certain succinct results following naturally from the proposi-
tions we have just stated were announced by the Supreme Court of
the United States in the case of Wooden Ware Co. *v.* United States,
106 U. S. 432 (1 Sup. Ct. 398, 27 L. ed. 230), were quoted ap-
provingly by the Supreme Court of this State in *Parker* v. *Way-
cross Co.,* 81 *Ga.* 396 (8 S. E. 871), and have been inserted into
our Code of 1895. They appear, in their original language, in the
Civil Code, § 3918, as follows: "Where plaintiff recovers for tim-
ber cut and carried away, the measure of damage is: 1. Where
defendant is a wilful trespasser, the full value of the property at
the time and place of demand or suit brought,without deduction
for his labor or expense. 2. Where a defendant is an uninten-
tional or innocent trespasser, or innocent vendee from such [unin-
tentional] trespasser, the value at the time of conversion less the
value he or his vendor added to the property. 3. Where defend-
ant is a purchaser without notice from a wilful trespasser, the value
at the time of such purchase." Our purpose in tracing the origin
of this code section is to show that, though it is in a sense statu-
tory, it is nevertheless merely a declaration of a particular phase
of certain well-recognized principles of general law. The state-
ment of the law as there announced, instead of being limited to
the special case of recoveries for timber cut and carried away,
might just as properly have begun: "Where a plaintiff recovers
for an article wrongfully converted and enhanced in value by the
wrong-doer or his successor in the wrongful possession, the measure
of damages is," etc.; for the principles of this code section have
been applied to cases of corn gathered and shelled, wheat reaped,
thrashed, and housed, cotton picked, ginned, and baled, leather
made into shoes, wool spun into cloth, grain made into whisky,
grapes made into wine, coal dug from the earth, ores mined and
milled, petroleum taken crudely and refined, and to similar cases ad
libitum. The rule announced in the code section means simply this:
Where appurtenances to realty have become severed, they become
personalty and subject to conversion; if converted, the owner may
trace the crude article through its various mutations and claim it as

his own (until a change through accession occurs) ; that trover will lie in his behalf to regain possession of the article, or to recover its value as damages; that the ordinary rules of trover cases are applicable, except that if the article, in the act of its conversion or subsequently thereto, becomes enhanced in value at the expense of the trespasser, the right of recovery is subject to the limitations that the defendant may plead and set off the value added to the property by improvements made pending an honest, though illegal, possession of the property, whether the improvements were made by himself personally or were bought by him from another unintentional wrong-doer. The object of the general doctrine, thus codified as to a particular phase, is to recognize and allow a right of set-off in trover cases of the character indicated, on the conditions named, just as a cognate principle of law, well recognized in this State, allows a set-off of the partial payments made by the defendant in cases of trover brought upon purchase-money notes reserving title. See *Hays* v. *Jordan,* 85 *Ga.* 741 (11 S. E. 833, 9 L. R. A. 373).

The code section mentioned above primarily relates only to trover suits. As codified, it immediately follows another section, which is applicable by its terms to trover cases alone. The measure of damage we are discussing is wholly inapplicable to an action of trespass quare clausum fregit. While the code section quoted does incidentally and indirectly state the measure of the damages recoverable in a suit for trespass to the personalty (a form of action usually employed where the conversion and the mutation of the property have proceeded to such a degree that the original title has been destroyed, under the principles of the law governing accession), it is intended to state a principle applicable to trover cases, and is not intended for trespass cases.

3. In trespass cases, especially in trespasses to realty, the fact that trespass was wilful is material only for the purpose of obtaining punitive damages. In trover cases, such as we have been discussing, the innocency and good faith of the defendant, or, if he is not the original wrong-doer, of his vendor, are material only as the basis of an affirmative defense of set-off. Therefore, if the plaintiff sues in trespass quare clausum fregit, and seeks to recover more than compensation for the actual injury, the burden is upon him to prove the defendant's bad faith, or the wilful quality of the

trespass; but if he sues in trover for his timber, or for products manufactured from it, he may recover the highest proved value, unless the defendant pleads a set-off of the improvements he has placed upon it and successfully carries the burden of proof as to this plea.

4. It follows also, from what we have said above, that the plaintiff suing in trover for timber cut and carried away and manufactured into lumber need not allege whether the defendant's trespass was wilful or not. The conversion is the gist of his case. If he does allege that the trespass through which the conversion came about was wilful, his case does not fail, if it develops that the trespass was inadvertent or innocent. The defendant may reduce, but not defeat, the recovery by showing his good faith and the enhancement of the value of the property at his expense. If the defendant seeks a set-off or a reduction of the ordinary damages recoverable in a trover suit, it is incumbent on him to see that the evidence submitted on the trial contains the necessary facts which the jury must have before them in order to calculate the amount to be allowed by way of set-off or reduction. Even though his good faith appears, if there is no testimony as to how much his labor and expense have added to the value of the property since the conversion, the jury is not authorized to reduce the verdict on that account. Until some other basis for recovery appears in the evidence, the plaintiff is entitled to recover, at his election, either the full value of the property at the date of the conversion (and if that date is not definitely shown, the date of the bringing of the suit may be taken instead), plus the interest from that date at 7% per annum, or "the highest amount which he can prove between the time of the conversion and the trial," without the addition of interest. *Jaques* v. *Stewart,* 81 *Ga.* 81 (6 S. E. 815); *Bank of Blakely* v. *Cobb,* ante, 289 (62 S. E. 24); Civil Code, §3917. In no event is the plaintiff's recovery to be reduced below the value his chattel would have had if left in the state in which the wrong-doer found it. In other words, the wrong-doer can not "improve" the owner out of his property or any part of its natural value.

5. The trial judge did not charge the jury altogether in accordance with what we have said above, but the errors he committed were either harmless as against the complaining party, or

in his favor, rather than to his prejudice. The specific exceptions are covered by the general principles announced in the course of the opinion. The verdict indicates that the defendant was allowed by the jury a reduction to which, under the state of the evidence, it was not entitled. A party will not be heard to complain that the verdict against him is too small.

*Judgment ·affirmed.*