# CASES

DECIDED IN THE

# SUPREME COURT OF GEORGIA

AT THE

## OCTOBER TERM, 1920.

---

### HAMMONTREE, guardian, v. CAGLE et al.

The evidence for the plaintiff authorized the jury to find that the defendants were wilful trespassers in cutting and carrying away the timber from the land of the plaintiff's ward. The court therefore erred in refusing to charge that the measure of the plaintiff's damage was the value of the lumber without deduction for expense and labor of the defendants in manufacturing the timber into lumber, and in charging that the plaintiff was entitled to recover only the "stumpage value" of the timber made into lumber.

No. 1997. JANUARY 13, 1921.

Complaint. Before Judge Morris. Cherokee superior court. December 29, 1919.

*E. W. Coleman* and *John S. Wood,* for plaintiff.

*Howell Brooke,* for defendants.

GEORGE, J. H. J. Hammontree as guardian of his wife, Hannah May Hammontree, filed a petition for injunction against W. H. and A. R. Cagle. The plaintiff alleged that the defendants without right or authority were cutting timber on certain lands of his ward, and that the defendants were insolvent. On the interlocutory hearing the court granted a temporary injunction, but provided in his order that the defendants might dissolve the injunction by giving a bond in a stated sum, conditioned to pay to the plaintiff any judgment recovered against them in the cause. On final trial the jury returned a verdict for the plaintiff. The plaintiff was dissatisfied with the verdict, and filed a motion for new trial. The motion was overruled, and he excepted.

1

Upon the trial of the case the plaintiff requested the court to charge the jury that if the defendants were wilful trespassers, then and in that event the plaintiff would be entitled to recover the full value of the lumber, without deduction for the expense of converting the timber into lumber. The court declined to give the charge as requested, but on the contrary instructed the jury that under the evidence in the case the plaintiff was entitled to recover only the "stumpage value" of the timber made into lumber. In Woodenware Company *v.* U. S., 106 U. S. 432 (1 Sup. Ct. 398, 27 L. ed. 230), the court held: "Where the plaintiff, in an action for timber cut and carried away from his land, recovers damages, the rule for assessing them against the defendant is: 1. Where he is a wilful trespasser, the full value of the property at the time and place of demand, or of suit brought, with no deduction for his labor and expense. 2. Where he is an unintentional or mistaken trespasser, or an innocent vendee from such trespasser, the value at the time of conversion, less the amount which he and his vendor have added to its value. 3. Where he is a purchaser without notice of wrong from a wilful trespasser, the value at the time of such purchase." The rule was approved by the Supreme Court of this State in *Parker* v. *Waycross & Florida Ry. Co.,* 81 *Ga.* 387, 396 (8 S. E. 871), and now appears as section 4515 of the Civil Code of 1910. It appeared that Mrs. Hannah May Hammontree, a minor, owned the land, and that her guardian had no authority to sell or lease the timber. He nevertheless, according to his contention, tentatively agreed to sell the timber to the defendants for three hundred dollars, sixty dollars to be paid upon the execution of the contract and the balance in stated installments. This tentative agreement was reduced to writing. On this point the contention of the guardian, sworn as a witness in his behalf, is as follows: "When the contract was drawn in the office of E. W. Coleman [counsel for the guardian] there were two drawn. I signed one, and Henry Cagle [one of the defendants] signed the other. I never gave him the contract I signed. I was to take the contract I signed, and if my wife was willing to make the trade I was to return it and he was to return his, and I was to receive the check [referring to a check for the initial payment]. The check was not to be delivered to me until the contract went back. Henry Cagle was to get Lon Cagle [the

other defendant] to sign his contract and return it to Coleman, and I was to get mine signed and receive the check [which had been delivered by Henry Cagle to Coleman]. Up to this time I had not given him any contract. He had never given me any contract. He has never given me any money or any profit or anything of value on this. . . My wife never signed that contract. . . I notified them it was not a trade, and disposed of the contract [destroyed it]. . . Henry Cagle signed the contract he kept, and I signed the contract I kept. I did not sign his contract, and he did not sign mine." E. W. Coleman, as a witness for the plaintiff, testified as follows: "Hammontree lived in Pickens county, and [defendant] came to know if I had any news. It was some two or three days after Hammontree was to send me his contract. He had decided not to let him have it, or his wife refused to sign it. . . I met Mr. Cagle on the street and told him Mr. Hammontree's wife would not sign the contract; they had decided to drop the matter. We walked up to where I started up to my office. I told him I would get that check and give it back to him. He said no, ' don't want the check, I am going on and cut that timber anyway.' I told him I did not suppose he would without authority. He said, ' I am going on and cut that timber anyway.' . . I have never cashed the check. I have never delivered it to Mr. Hammontree, because Mr. Cagle had never tendered me his part of the contract, nor has Mr. Hammontree ever given me his. . . I got the check and offered it back to him." From this evidence the jury would have been authorized to find that the defendants were wilful trespassers. There being evidence tending to show the value of the lumber manufactured from the timber, the court erred in refusing to charge as requested, and in charging that the plaintiff was entitled to recover only the stumpage value of the timber made into lumber.

Except as indicated above, none of the rulings of the court, complained of in the motion for new trial, show cause for reversal.　　　　　*Judgment reversed. All the Justices concur.*