## ARGUED AND DETERMINED

IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

### AT GAINESVILLE,

### SEPTEMBER TERM, 1849.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

No. 63.—WILLIAM H. TROUT, plaintiff in error, vs. IRENA GOOD-MAN, defendant in error.

[1.] Relief can be had against any deed or contract in writing, founded in *mistake* or fraud.

[2.] The mistake may be shown by parol proof of the declarations of the vendor, made subsequent to the sale.

[3.] Relief will be granted, in all cases, to the injured party, whether he sets up the mistake affirmatively by bill, or as a defence.

[4.] The power of rectifying and reforming written contracts of *mistake* on the ground, constitutes a distinct branch of Equity jurisdiction; though it is one which Courts of Chancery will exercise very sparingly, and upon the clearest and most satisfactory proof only, as to the intention of the parties.

[5.] If it be evident that both parties were mistaken on a material point, as to the true boundary or lines of the survey, a Court of Equity will grant relief to the buyer.

In Equity, in Jackson Superior Court. Decided by Judge DOUGHERTY, February Term, 1849.

William H. Trout sold a tract of land to John T. Goodman, and gave a bond for titles, describing the land as "the tract on which he (Trout) lived, embracing the Pendergrass tract." Good-man died, and his executrix filed a bill, alleging that the purchase money had been paid, and Goodman had been in possession since the sale; that there was a mistake in the bond, in describing the land, the contract including all the land north of Buffalo Creek; whereas the line of the Pendergrass tract leaves out about sixty acres; that Trout had frequently admitted the fact, but refused to make a deed according to the contract. The bill prayed that the written contract might be reformed, and a specific performance decreed. Trout, by his answer, denied the mistake alleged, and tendered a deed drawn in accordance with the bond.

Parol evidence was offered to prove the declarations of Trout, subsequent to the sale, to show that he had sold the land north of Buffalo creek. Defendant objected, and the objection being overruled, exceptions were filed.

A new trial was moved, on the ground that the verdict of the Jury was contrary to the law and evidence.

The Court refused the rule, and defendant excepted.

On these exceptions, error has been assigned.

J. W. HARRIS, for plaintiff in error.

B. H. OVERBY and T. R. R. COBB, for defendant.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Is parol testimony admissible in Equity, to correct a mistake in the boundary of land, as described in the written contract? And if so, are the declarations of the vendee, made subsequent to the agreement, competent to prove what was the true intent of the parties? These are the points presented in the bill of exceptions.

Amidst the conflict of authority which *abounds* upon this subject, it would be mere pedantry, in me, to do more than announce the position of this Court, in relation to the questions made by the record. And it will be found condensed in a single para-

Trout *vs.* Goodman.

graph, in the very elaborate opinion of Chancellor *Kent*, in *Gillespie and Wife vs. Moon*, (2 *John. Ch. R.* 585,) viz:

[1.] That relief can be had against any deed or contract in writing, founded in mistake or fraud ;

[2.] And that the mistake may be shown by parol proof;

[3.] And the relief granted to the injured party, whether he sets up the mistake affirmatively, by bill, as in the present case, or as a defence. I need only add, that this decree was predicated exclusively upon the acknowledgements of the vendor, made subsequent to the sale.

[4.] It is conceded that those who undertake to rectify an agreement, by showing a mistake, undertake a task of great difficulty. Lord *Hardwicke* said it required the strongest proof possible; and Lord *Thurlow*, that it must be irrefragable proof. Still, it cannot be denied that the power of reforming written contracts, on the ground of *mistake*, as well as *fraud*, constitutes a separate and distinct branch of Equity jurisprudence. It is one, however, which Chancery will exercise very sparingly, and only upon the clearest and most satisfactory proof of the intention of the parties. *U. States vs. Monroe*, 5 *Mason's R.* 577.

[5.] The case of *Hull vs. Cunningham's Ex'r*, (1 *Munford's R.* 330,) referred to by the Court of Appeals of Virginia, in *Tucker vs. Cocke*, (2 *Rand.* 51,) and admitted by counsel on both sides in the argument, to be the law, and cited by Judge *Tucker* in his Commentaries, with approbation, (2 *vol.* 404,) settles the identical principle involved in this case, to-wit: that though the land be sold in gross, for so much, be it more or less, yet if it be evident that both parties were mistaken in a material point, *as to the lines by which the vendor held,* and there was no express agreement on the part of the purchaser, to take the risk upon himself, a Court of Equity will grant relief, by correcting the error in the boundary. And the reason assigned is, because the buyer does not get the specific thing he contracted for.

We have confined our judgment merely to the question of the *competency,* and not of the *sufficiency* of the testimony adduced on the trial below. We do not believe that the evidence offered by the complainant ought, under the circumstances, to have prevailed against the answer of the defendant, insisting that there was no mistake. Still, there was proof to warrant the verdict. The dispute is, shall the boundary be limited on one side of this

Trout *vs.* Goodman.

tract of land, to the Pendergrass survey, or be extended to Buffalo creek? Hardy Howard swears, positively, that Trout acknowledged to him that he had sold to Goodman *all* the land north of that creek; and there is other corroborating proof. Two Juries have successively found that the evidence was sufficient to reform the contract, and have decreed accordingly. We do not feel at liberty to set aside their verdict, as contrary to evidence. The weight of the testimony was their business, not ours; and believing, as we do, that the Jury has not had fair play, in the *sole* exercise of the power confided to them by law, of passing upon the facts, we will not, upon slight or doubtful ground, interfere with their finding.

By the Constitution of 1777, the Juries were made judges of the law as well as of the fact, *in all cases*, and the Judges could only give their opinion, when any or all of the Jury had doubts concerning the law, and applied to the Bench for instruction. *Watkins' Digest*, 14. How completely have the relative positions of the Court and the Jury been reversed, in practice at least, since that day, when, owing to the advance of the community in mental and moral qualifications, the very contrary result should have followed. At any rate, their power is still unlimited in Chancery causes, after the suit is " submitted to them upon the merits, with the evidence thereon." *Watkins' Dig.* 488, 621.

The testimony then, which was introduced, being legal, and the Jury, whose province it was, under the law, having found that it was not equal, or nearly *in equilibrio;* but that it was clear, unequivocal and decisive, as to the existence of the mistake, there is nothing in the record to warrant our interference. And the conclusion therefore is, that the judgment be affirmed.