Doe, *ex dem.*, &c., *vs.* Roe, *cas. ejector.*

JOHN DOE, *ex dem.* of JOHN HOLLIS, ALEXANDER STEW-ART, LEWIS S. ZACHRY, W. G. KOLB, and ABNER PAR-ROTT, plaintiff in errror, *vs.* RICHARD ROE, *cas. ejector*, and SETH C. STEVENS, tenant in possession, defendant in error.

1. In an action of ejectment, a registered deed for the premises in dispute is admissible in evidence, without further proof, unless an affidavit be filed as provided for by the Code, section 2674.
2. A party may attack a deed for forgery, by any competent evidence, after it has been read to the jury.
3. If an affidavit be filed as provided by for the Code, the deed cannot be read as evidence until an issue as to its genuineness be tried.
4. A party has a right to give in such competent evidence as he may see proper; and if he produce proof sufficient to satisfy the minds of the jury, they should not be told that the use of the evidence introduced, rather than of certain other testimony which the opposite party insists would have been stronger, is a circumstance against the party introducing it.
5. Proof of an *alibi* of the alleged maker of a deed at the time it bears date is a mode of impeaching it; and such testimony is admissible for the purpose of satisfying the minds of the jury that the deed is a forgery.

Ejectment. Motion for new trial. Decided by Judge VASON, Baker Superior Court, November Term, 1866.

This was ejectment for land, lot No. 399, in the 11th District of originally Early, now Baker County.

The evidence on the trial was as follows:

Plaintiff, having first accounted for the original grant, read in evidence a copy. The lot was granted to John Hollis, of Morgan County, 10th November, 1829:

Deed from Hollis to Alexander Stewart for said lot, dated 29th July, 1830, recorded 18th February, 1839:

Deed from Stewart to Lewis Zachry, dated 29th March, 1838, recorded February 18th, 1839: (Both of these two last named deeds were drawn from defendant's possession:)

Deed from Zachry to William G. Kolb, made in Campbell County, Georgia, 24th December, 1840, in presence of Addison Barnes and Valentine Kolb, and probated by Valentine

Kolb before Henry Paselet, J. P., on 26th December, 1840, and recorded 9th February, 1854:

Deed from William G. Kolb (of the State of Texas) to Abner P. Parrott, of Campbell County, Georgia, on the 9th July, 1852: (This deed purported to have been made in Cobb County, Georgia, and its consideration expressed was $500.00:)

NORRIS SMITH testified that Stevens was in possession of said lot (by witness as his tenant) when the suit was commenced. Smith also testified as to the value of said lot for rent, (as did also one Henry Slappy,) but that testimony is not important.

· Plaintiff here rested his cause. Defendant introduced the following evidence:

Deed from Lewis Zachry to William Kolb for said lot, made 2d March, 1841, in Campbell County, Georgia, in presence of Martin Kolb and William Bomer, Justice of the Inferior Court, recorded November 23d, 1852: (The consideration expressed in this deed was $500.00, and the deed had this endorsement upon it: " This is a forged deed, this 24th April, 1854; Lewis Zachry. Attest, A. W. Conyers, Clerk Superior Court:")

Deed from William Kolb to Manly W. Ford, for said lot, made in Walker County, Georgia, on 9th June, 1850, consideration $400.00, in presence of John Day and E.r Sasseen, recorded 24th November, 1852:

Deed from Manley W. Ford to Seth C. Stevens, dated 8th November, 1852, consideration $250.00, made in Baker County, Georgia, in presence of William H. Bassett and Littleton Phipps, probated by Bassett before Green Tinsley, J. I. C., 13th November, 1852, recorded 24th November, 1852:

The plaintiff, in rebuttal, read in evidence the certificate of the Secretary of State, that, as appears by the records of that office, the Justices of the Inferior Court of Campbell County, Georgia, from the 10th January, 1837, to the 1st January, 1842, were as follows:

Joseph Camp, Joseph Jay, James M Kay, Robert C. Be-

vers, and Shadrack Green, were commissioned 11th January, 1838, Alfred Kamp and Berryman Kamp, 19th February, 1838, Thomas Rice and Alexander McLarty, 21st January, 1839, David D. Smith, Alfred G. Camp, Thomas S. Rice, Wade White, and Robert O. Bevers, 14th January, 1841:

Interrogatories of LEWIS ZACHRY (to which were attached a release from Parrott and the deed from Lewis Zachry to William Kolb, dated 2d March, 1841, under which Stevens claimed the land, and a deed from Zachry to Kolb, dated 24th December, 1840, aforesaid) were next read by plaintiff:

He testified that he did not know Stevens, that he did not believe he ever made the last deed attached, for the handwriting of his signature is a better hand by far than he ever wrote, though he did make a deed to the lot mentioned in said deed to William Kolb, (or William G. Kolb, which was the correct name he did not recollect,) that if he ever made more than one such deed he did not remember it, and did not think he had, and for the reason aforesaid did not think he ever signed the last deed attached; that he did not know where William Kolb lived in 1852, that he first saw him in December, 1840, at his brother's (Martin Kolb's) Campbell County, Georgia; then sold him said land and did not recollect ever to have seen him again, except in March, 1842, at the same place; that William Kolb then said he lived in Coweta County, Georgia; that witness never lived in Campbell County, Georgia, but happened at Martin Kolb's on a visit at said time; that he knew no man in Campbell County, Georgia, named Bomer, and knew nothing of the officers of that county; that the deed from witness to Kolb, dated 24th December, 1840, is genuine, because witness wrote it himself.

On cross-examination, he stated that he made the endorsement on the deed aforesaid because, after a careful examination of the deed, he was satisfied, for the reasons aforesaid, that he did not sign it; that he had had no communication with the claimants of this land, except that they sent to witness for inspection the deed dated 24th December, 1840; that having both deeds before him, not remembering that he made two, he is satisfied one is genuine and the other as aforesaid

is a forgery; that Kolb gave him two lots of land in Walker County for said lot, the numbers of said two lots he did not recollect; that he did not recollect making second deed upon Kolb's representing that the first was lost; that he saw Martin Kolb write about the date of this deed, but did not know his hand-writing well enough to swear to the signature, nor whether or not it was like his signature; that he knew nothing at all about Bomer, did not know him, and if he ever saw him write did not know it; William Kolb was sometimes called William and sometimes William G., and was Martin Kolb's brother; report said that William ran away for murder; that he knew Martin Kolb, who then resided in Campbell County, and for truthfulness he stood, as far as witness knew, as fair as any man; that he knew nothing of the opinions of Martin Kolb and John W. Edge, and knew not why they were selected as witnesses. (21st August, 1857.)

WILLIAM G. KOLB, whose interrogatories were executed in Freestone County, Texas, testified that he did not know Seth C. Stevens, but had known Lewis S. Zachry; that he had a release by Abner B. Parrott from his warranty in the deed aforesaid (which deed was attached to these interrogatories); that he never deeded said lot to any person but A. B. Parrott; that he left Georgia in the winter of 1845, to the best of his recollection; that he believes the annexed deed is the one he made to Parrott; that he considered he owed Parrott for services rendered, (how much he did not know,) and with it, a desire to bestow something upon his daughter, Parrott's wife, was the inducement which caused him to make the deed; that he was living in Freestone County, Texas, and was there on the 9th June, 1850.

ALZADA KOLB and PETER M. KOLB answered interrogatories in McLeman County, Texas.

ALZADA testified that she was well acquainted with Abner B. Parrott and William G. Kolb; that said Kolb was in 1850 living in Limestone or Freestone County, Texas, and on the 9th June, 1850, was at home, or near about home; that he moved from Coweta County, Georgia, to Texas in

Doe, *ex dem.*, &c., *vs.* Roe, *cas. ejector.*

1845 ; that she recollected his being at home 9th June, 1850, from the fact of there being some sickness in the family at that date.

PETER testified that William G. Kolb was his father, and had been known to him from his earliest recollection ; that his said father was residing in Freestone County, Texas, and was at home 9th June, 1850, that he lived but one mile from his father in 1850, that his father was a candidate for Justice of the Peace, the election to be 1st of August, 1850, and his father was at home two months or more before said election, that his father moved from Coweta County, Georgia, to Texas in 1845.

Plaintiff also read interrrogatories of EZEKIEL HIGDON, MOSES WELLS, and CHARLES SHELTON, taken in Freestone County, Texas.

WELLS swore that William G. Kolb lived in Freestone County, Texas, in 1850, and his impression was that he was there on 9th June, 1850.

EZEKIEL HIGDON swore that he did not know where William G. Kolb was on the 9th June, 1850, but that Kolb lived in Freestone County, Texas, in 1850, that witness lived in said county, Texas, and saw Kolb at witness' house some time in said June, and never heard of Kolb's being away from said county during said month.

CHARLES SHELTON swore that William G. Kolb was frequently at his store in June, 1850, and though he did not know, he believed he was in Freestone County, Texas, on 9th June, 1850.

JOHN M. EDGE, of Campbell County, Georgia, in behalf of plaintiff, testified that. he had no recollection of ever seeing a deed from William Kolb to Manly W. Ford to said lot, that he knew nothing of the deed referred to ; that he never saw said Kolb sign his name but once or twice, but had often seen his name signed to letters purporting to be from him ; that he knew nothing of Manly W. Ford of his own knowledge, but by reputation said Ford was an honest man, a bad manager, easily imposed upon, and totally insolvent ; that he once saw a deed purporting to be a deed from

Doe, *ex dem.*, &c., *vs.* Roe, *cas. ejector.*

Lewis Zachry to William Kolb, of Campbell County, Georgia, the date of the deed he did not remember, but it was witnessed by Martin Kolb and one Bomer, as Judge of the Inferior Court; that William G. Kolb never resided in Campbell County, Georgia, but he resided in Meriwether and Coweta Counties, in Georgia, for several years before he moved to Texas; that he was not a blood relation of said Kolb, bnt married his neice in 1847.

Plaintiff closed. Defendant replied as follows:

ABNER B. PARROTT, by interrogatories, testified that he received a deed from William G. Kolb for said lot for sundry services rendered him; that witness married Kolb's daughter; that this suit is not pending for benefit of Kolb, and a recovery will not benefit Kolb; that he was not Kolb's security, nor did he hold the deed to save him from loss; that Kolb owes him nothing, and witness is not responsible for any criminal charge, nor has had anything to pay on any bond for Kolb; that he has had nothing to do with any prosecution against Kolb, knows nothing of any such prosecution being abandoned; that he was under no liability for Kolb, and Kolb had owed him nothing since said deed was made.

Interrogatories for EDWARD R. SASSEEN (to which was attached the said deed from Kolb to Ford) were to this effect: His signature as J. P. to said deed was genuine, he believed, because it resembled his writing at that time, and because he then signed his middle name with a small "R"; and because he often signed his name hurriedly, without taking up the pen from the paper; he was a Justice of the Peace in Walker County, Georgia, from sometime in fall of 1849 to fall of 1852; he does not recollect whether he ever knew John Day or William Kolb, or how they looked; he was keeping hotel in a public place in 1850, and frequently witnessed deeds for strangers; he never knew Manly Ford or his character; he had some doubt about the genuineness of his signature, but it was like his signature at that time, and he believed it was genuine:

Doe, *ex dem.*, &c., *vs.* Roe, *cas. ejector.*

Two letters from LEWIS ZACHRY in these words:

" COVINGTON, *August 20th*, 1857.

" MR. SETH C. STEVENS OR HIS ATTORNEYS : Some days back I was called upon as evidence in Baker Superior Court by commission to take interrogatories about two deeds that appear to the same lot of land—399, in 11th District of Early, but now Baker County.  Since my evidence was taken, in looking over my papers for a lost note of hand, I find a memorandum book, in pencil writing of my own hand, explaining about the two deeds, which had slipped my recollection clear.  So if you will have another set of interrogatories taken and sent to me, I will have them filled out and sent back to you as early as possible, as it will set everything as clear as day on that subject.  I have written to Warren & Warren, at Albany.

" So I remain yours,

LEWIS ZACHRY."

" COVINGTON, *September 13th*, 1857.

"R. F. LYON, Esq.:—I this morning received a letter from Seth C. Stevens, stated that you were his attorney in the case about the two deeds, and requested me to inform you of the discovery I had made since the taking of the interrogatories. I find in an old memorandum book, that I find in pencil-mark, in my own hand-writing, in these words : ' W. G. Kolb is to bring my deed with him when he goes with his cotton to Augusta, as I have made him another deed, this 2 March, 1841.'  This is my recollection of the memorandum. I am now writing from recollection without having the memorandum before me ; but on finding the memorandum, it refreshes my recollection about the deeds, as I gave him, Kolb, the original plot and grant when we traded.  So I am desirous that justice should be done in the premises,—so I wanted both sides should know all that I recollect about the matter.

"So I remain yours,

LEWIS ZACHRY."

Seth C. Stevens executed a release to Lewis Zachry, attached said supposed forged deed to another set of interrogatories, and Zachry answered them. These last interrogatories were in substance, as follows: From the signature *alone* of this deed, witness would say, without much hesitation, that it was not genuine, but from circumstances discovered since testifying before, he is inclined to believe that the deed is genuine. He then related that Warren showed him this deed with the other interrogatories, that he had possession of it before, that he had sent it to Martin Kolb, asking if his signature as a witness, was genuine, and that Kolb said it was not, and he then showed the deed to intimate friends and persons acquainted with his hand-writing, who said his signature was not genuine, and from these circumstances, being satisfied that his name was forged thereto, he made the said endorsement; that he thought no more of it till he answered said first set of interrogatories and reiterates the statements in said letters as to finding the memorandum, etc. He then proceeds to state that after he made the first deed, William Kolb, at Martin Kolb's house, asked him to make a deed, he replied that he had done so, and given him the plot and grant; that William Kolb said if he had had such deed it was lost, and witness then made him another, with the understanding that if he found the first one, he would return the last when he went to Augusta with cotton.

He further said that although this signature was not his *apparently*, since he was refreshed he did not doubt that it was his, and in substance, in answer to cross-interrogatories, admits that he swore as stated in former interrogatories, but thinks he was then mistaken; that he wrote to the parties to let them know the facts; that he had often seen Martin Kolb write, then thought and still thinks the letter he got in reply to his was in Martin Kolb's handwriting, that he learns that Martin Kolb died sometime in spring of 1857, (these interrogatories were taken in October, 1857,) that his recollection of Martin Kolb's handwriting is so indistinct that he cannot say whether the letter attached to these interrogatories was written by him; that if he wrote Stevens that said

second deed was a forgery, he had forgotten doing so, that he did not recollect ever to have seen Stevens, that he had no acquaintance with William Bomer, and did not know that he had ever seen him.

Here the evidence closed.

What the Court refused to charge, and what he did charge, does not appear, except the refusal and the charge set out in the motion for new trial are certified to be true.

The jury found for the plaintiff the premises in dispute, and five hundred dollars for mesne profits.

A new trial was moved for on the grounds—

1st. That the Court erred in allowing any proof as to the mesne profits or value of rents of the premises after suit brought.

2d. Because the Court erred in admitting the testimony of Lewis Zachry, William G. Kolb, Peter Kolb, Alzada Kolb, Charles Shelton, Moses Wells and Ezekiel Higdon, for the purpose of attacking the genuineness of the deeds from Lewis Zachry to William G. Kolb, and from William Kolb to Manly W. Ford, under which defendant claimed title, no affidavit having been made or filed by the makers, or either by their heirs or the opposite party or any one else that said deeds or either of them were forgeries, to the best of their knowledge or belief.

3d. Because the Court erred in refusing to charge as requested by counsel for defendant, that the testimony of witnesses, (taken by interrogatories, executed in a distant State,) all of whom were unknown to the jury, impeaching the genuineness of a deed by simply testifying to the fact that the maker was at a different place from that at which the deed was made, at the time it was made, was of a weaker and more unreliable character as evidence to impeach the deed, than direct proof that the deed was not the deed of the maker or was not in the handwriting of the maker, and that when it was possible and in the power of the party relying on the impeachment of a deed to (make) this proof, it was his duty to do so, and the failure to produce this, it being perfectly in the power of the party to do so, his relying

rather on the proof of the maker's being at a different place at the date of the deed, was a circumstance against the party offering the testimony.

4th. That the Court erred in charging instead, that, proof of an *alibi* at the date of the deed, was but another mode of impeaching the deed, and if it satisfied the jury that the deed was a forgery, this testimony was competent for that purpose. And lastly, because the verdict was contrary to the evidence, and the weight of evidence, and contrary to law.

The Court refused the new trial upon condition that plaintiff's attorney would write off the recovery of mesne profits, which was then and there done.

Error was assigned in the Supreme Court upon the grounds taken in said motion.

*Note.*—By consent of counsel the original deeds came up with the record, and were used in the Supreme Court by counsel and the Court for inspection.

Judge R. F. LYON, for plaintiff in error.

L. P. D. WARREN and Gen. J. G. WRIGHT, for defendant in error.

WALKER, J.

1. In an action of ejectment, a registered deed for the premises in dispute, shall be admissible in evidence in any Court in this State without further proof. Code, Sec. 2674. To this rule there is one exception, namely: when the maker of the deed, or one of his heirs, or the opposite party in the cause, will file an affidavit that said deed is a forgery, to the best of his knowledge and belief. In such case, the Court shall arrest the cause and require an issue to be made and tried as to the genuineness of the alleged deed. Ib.

2. This is a cumulative remedy. A party alleging a deed to be a forgery is not obliged to make the affidavit. After the deed has been admitted, he may introduce any competent evidence to impeach it. If he can successfully attack the deed without making the affidavit, it is his right to do so.

3. If the affidavit be filed, it then becomes the duty of

Doe, *ex dem.*, &c., *vs.* Roe, *cas. ejector.*

the Court to suspend the case, until the issue as to the genuineness of the alleged deed is tried.   In this case the party did not make the affidavit prescribed, but introduced evidence sufficient to satisfy the jury that the deed in controversy was a forgery.   There was no error in the Court in permitting him to do so.

4. It is insisted that the Court erred in refusing to charge the jury that the testimony of witnesses, impeaching the genuineness of the deed, by showing that the alleged maker, at the date of the deed, was at a different place from that at which the deed was made, was of a more unreliable character than direct proof that the deed was not the deed of the maker, or was not in his handwriting, and the failure to do so, when they had the power to make this proof, was a circumstance against the party offering the testimony.   A party has the right to select such competent testimony as he may see proper, and if he can, by any legal testimony, establish the truth of his allegations, the jury should not be told that the introduction of such testimony, rather than some other testimony which the opposite party insists would be stronger, is a circumstance against the party.   Parties have the right to introduce legal testimony to establish the truth of their cases.   If the evidence be competent, pertinent to the issue to be tried, and makes clear the point in controversy, this is sufficient, and the jury ought not to be told that it is of an unreliable character.

5. There are different circumstances which may impeach a deed.   The facts proved in this case satisfied the minds of the jury that the deed in controversy was not genuine.   Other facts might, if they exist, have been proved.   All that is required is for the party to present competent testimony sufficient to satisfy the minds of the jury, and his task is done. It is the duty of the Court to see that the testimony introduced is legal, and the jury will decide upon the credibility, force and effect of it.   There was testimony in this case sufficient to sustain the verdict.

Judgment affirmed.