This is the second appearance of this case. Hill sued for injunction to restrain Agnew from cutting and removing sawmill timber from land which the plaintiff had purchased from the defendant. The defendant filed an answer, in which he admitted selling the land *Page 760 
to the plaintiff, but alleged that the timber was reserved by express understanding of the parties, which reservation, by accident, mistake, and omission, was not put in the deed, and he prayed that the deed be reformed so as to embody such reservation. The trial judge, after hearing evidence from both sides, refused an interlocutory injunction, which judgment was affirmed by this court in 199 Ga. 644 (34 S.E.2d 702). Thereafter the defendant amended his answer and the trial judge overruled demurrers to the answer as amended. On the subsequent trial before a jury, after introduction of evidence by both parties, the judge directed a verdict for the defendants, and the plaintiff excepted. Held:
1. Under the law as laid down in the former decision as to reformation, the judge did not err in overruling the demurrer to the answer and cross-action as amended; and this is true although the rulings of law as then made by this court did not relate to any ruling of the trial judge as to the sufficiency of the answer, but were made only upon exceptions to the refusal of an interlocutory injunction. Georgia Ry. Power Co. v. Decatur, 153 Ga. 329 (2, 3) (111 S.E. 911); Bryant v. State, 197 Ga. 641, 645 (30 S.E.2d 259).
2. "The testimony of a party who offers himself as a witness in his own behalf is to be construed most strongly against him, when it is self- contradictory, vague, or equivocal." Shepard v. Chappell, 29 Ga. App. 6 (2) (113 S.E. 23). Applying this rule, it appears without dispute from the plaintiff's own testimony that in his agreement with the defendant he bargained for the land without the timber, did not pay for the timber, and was not to have it. The defendant also testified that it was not his intention to sell the timber. In these circumstances, it conclusively appears that the plaintiff was not in position to seek affirmative equitable relief such as injunction, and the court properly directed a verdict for the defendant as to that issue. Code, § 37-104.
3. Under the pleadings and the evidence, however, and especially the testimony of the defendant himself as to his reason or excuse for not inserting a reservation clause in the deed, the verdict in his favor for the affirmative equitable relief of reformation as sought by him was not demanded, and the court therefore erred in directing the jury to find in his favor for such relief. Code, §§ 37-211, 37-212; Werner v. Rawson, 89 Ga. 619 (2) (15 S.E. 813); Green v. Johnson, 153 Ga. 738
(3) (113 S.E. 402); J. Kuniansky Inc. v. Ware, 192 Ga. 488, 491 (4) (15 S.E.2d 783).
(a) The ruling just made is not contrary to the former decision, since it did not involve any determination as to whether the defendant was as a matter of law entitled to the relief of reformation, regardless of any issue as to negligence on his part.
4. Under the preceding rulings, the judgment overruling the demurrers to the answer as amended, and the direction of the verdict against the plaintiff as to injunction, will be affirmed, while the direction in favor of the defendant as to reformation will be reversed.
Judgment affirmed in part, and reversed in part. All the Justices concur, except Wyatt, J., who took no part in the consideration or decision of this case.
 No. 15878. SEPTEMBER 6, 1947. REHEARING DENIED OCTOBER 17, 1947. *Page 761 
Hill sought to enjoin Agnew from cutting sawmill timber on described land purchased by the plaintiff from the defendant. The defendant filed an answer admitting conveyance of the land to the plaintiff by warranty deed, but alleging that there was an express oral understanding at the time of the sale that the timber was reserved, which reservation, by accident, omission, and mistake, he failed to put in the deed; and he prayed that the deed be reformed so as to embody such reservation of the sawmill timber. The trial judge, after hearing evidence from both sides, refused an interlocutory injunction, and that judgment was affirmed by this court. 199 Ga. 644 (34 S.E.2d 702). The plaintiff had filed a demurrer to the answer, but since the demurrer had not been passed upon by the trial court, this court stated in its opinion that no ruling was then made as to the sufficiency of the answer to allege facts authorizing reformation of the deed because of mutual mistake in its execution. However, after discussing the facts of the case and the law applicable thereto, it was said: "Of course, before reformation can be had, a mutual mistake should be shown. Ordinarily, an allegation or proof that something was omitted `by mistake' would not be sufficient; but, in order to lay the foundation for aliunde proof, it should be shown how, in what manner, and by whom the mistake was committed. Dover v. Burns, 186 Ga. 19, 27 (2) (196 S.E. 785). We think that the present case, under its peculiar facts, offers an exception to this general rule. We lay down the rule that where, on an interlocutory hearing, the defendant in his answer seeks a reformation of a deed, although there may be insufficient preliminary proof as to the mutuality of mistake, if the indisputable evidence, including the admissions of the party resisting reformation, shows that the instrument does not speak the true agreement of the parties, and there is no conflict as to the real intentions of the parties, and no rights of third parties have intervened, the undisputed proof and admissions that the written instrument does not speak the true agreement between the parties are sufficient to show a mutuality of mistake and to authorize the court to refuse an interlocutory injunction sought by the party resisting reformation, in the absence of other proved facts necessitating an interlocutory injunction to preserve the status of the property in controversy." *Page 762 
In the plaintiff's original demurrer to the answer, he contended that the allegations contained therein did not set forth a cause of action for reformation, and that several paragraphs of the answer, as well as the prayer, should be stricken, for reasons stated.
On the call of the case for trial in the court below, after the decision by this court, the defendant amended his answer by adding thereto substantially the following allegations: When he and the plaintiff negotiated and traded in the sale of said lands, a reservation of the timber was omitted by mutual mistake, for that at the time and the place and on the date of sale the agreement was that the timber was not to pass, and the timber was not sold to plaintiff, "nor was it ever intended by either [party] to the contract that the timber on said lands was to pass." The deed does not speak the true bargain, and defendant had no thought as against the real agreement that plaintiff would try to claim said timber. In every term and agreement there was a perfect understanding that the timber was not sold, and would not and did not belong to plaintiff. Both parties understood this agreement, and the deed does not speak the agreement, and is not the trade and is not what was agreed on, for no timber was sold to plaintiff by defendant from said described lands, and the plain and unequivocal agreement was that plaintiff was to have only a few trees which were agreed on, and the deed by mutual error and mistake does not speak the real trade or agreement.
The plaintiff then renewed his original demurrer to the answer as amended, and demurred further upon the following grounds: 1st. The amended answer is wholly insufficient to set forth any matter of defense in the case or to state any reason why the deed set forth in the petition by copy should be reformed. 2nd. The averments of the answer are insufficient to set forth any matter of defense, because it has been adjudicated in this case that the alleged mistake must be a mutual one, and there are no allegations in the answer which show a mutual mistake. Nor is it alleged how and in what manner the alleged mistake was made.
The court overruled all grounds of demurrer, and the plaintiff excepted pendente lite. On the trial before a jury, both parties introduced evidence. At the close of the evidence, the judge directed a verdict in favor of the defendant, on which verdict a decree was entered that the deed be reformed as prayed, so that the *Page 763 
defendant would get the timber on the land described, with reasonable time to remove such timber. The plaintiff moved for a new trial on the usual general grounds, and thereafter amended by adding two special grounds as follows: 1. The movant contends that there were issues of fact in the case to be determined by the jury, and for this reason it was error to direct the verdict. 2. There were material conflicts in the testimony, some of such alleged conflicts being set forth in the amendment to the motion.
The evidence introduced before the jury was substantially as follows: L. D. Hill, the plaintiff, on direct examination testified: I have a land deal with Mr. Agnew, in which I bought a tract of land from him. The consideration of the transaction was $2500 for the land and to have the lines surveyed out and established and cleared out. Of the crops I was to have the hay and corn for the same consideration. I was in Tennessee when the deed was executed. I received the deed while I was in Tennessee, from Mr. Agnew from Farmers Merchants Bank. I deposited the money in Farmers Merchants Bank for this property. I deposited it under the condition that the lines were to be run out. The lines were to be run out and the corners and lines established. I had formerly been with Mr. Agnew here in Summerville when I instructed him to have the deed made. The deed was not made then because the lines were to be run out before the deed was made; that was the condition that I placed it on. The deed was not made when I was in Summerville because the lines were not established and run out. I declined to accept the deed until they were. The lines were not surveyed and established before he mailed it to me. The lines were in the same condition as they were when I declined to purchase it. I received the corn crop on the place, but did not get the hay. It was about three months before I came back to Georgia. I came back about the first of December. The deed he mailed me is set forth in this copy.
Cross-examination: If the deed bears date of August 31, 1944, I presume that is right. I put the revenue stamp on it, before I got it registered. Later on I attended the interlocutory hearing and later Mr. Rink came down and ran out the lines, after the filing of this suit. The action of Mr. Rink has not been objected to, that is, I have not gone into court and asked that the lines be acted on by this court. I just accepted the lines as run out by Mr. Rink. *Page 764 
In the statement over there, I said I did not purchase the timber. There was not anything said about the timber much. As to whether I paid for it, I would not — the timber was on the farm and it was a parcel of it, and under the circumstances it appears to me that I did pay for it. I placed the money in the bank over there. I made the statement that I did not buy the timber in the verbal negotiations. I had been to see Mr. Agnew to get him to run out the lines. The only objection for three or four months was that the line had not been run out, and the verbal agreement did not hold and I tried to hold the written agreement, and that's the reason I filed the injunction. There was not any established agreement about the timber. I don't believe I said I didn't want the timber. We would all sort of like to have the timber, but I didn't want to be unreasonable. I was not particularly interested in the timber, and am not yet. If I had bought it I would have an interest in it. I bought the land and was to have the lines run out and the corners established and the corn and hay crops. I was not running out the lines so I could get the timber. That was part of the purchase-price and the former agreement, that was the verbal agreement. Mr. Agnew had not cut the timber before I sought to enjoin him. When the lines were run out, I did not know where they were going to run, and I wanted to see where they were and when he logged a little over the line, about one hundred and fifty feet, he cut about fifteen or eighteen trees over the lines, after they were run off, and I think it was about eighteen trees that he cut. Mr. Agnew did not cut out at least half of the timber on the place before I sought to enjoin him; he cut about eighteen or twenty trees. I had not bought the timber and had not paid for it and would not claim it except for the fact that I got it in the deed and think it is mine. I never bought the timber.
Redirect examination: Mr. Rink was down there after the filing of this suit. I did not buy the timber, not in the verbal agreement with Mr. Agnew prior to the deed.
Examination by the court: I had negotiations with Mr. Agnew for the purchase of some timber over there, and in the negotiations, that is the verbal agreement, I was to buy the land and not the timber, except maybe some trees that were to be used by me, and the deed was made and there were no exceptions made in the deed about this timber. The reason I'm asking for the timber is the *Page 765 
lines were not run out and I filed an injunction on the timber in order to hold my written agreement. You see, getting these lines run out involved a lawsuit. The deed was written out with no reservations. My agreement sometime prior to the making of the deed was that I was not to have the timber, and the reason I raised the question was that the lines were not run out.
Recross examination: "I do not still owe him $2500 in [on] the place. I have paid him."
G. W. Agnew, the defendant, testified on direct examination: I don't know where Mr. Hill was when this deed was made. He was not with me. I claim there was a mistake. I guess I made the mistake. Prior to the making and execution of this deed, Mr. Hill and I were in Summerville for the purpose of making the deed. Mr. Hill did not decline to accept the deed until the lines were run out and established. He suggested that we have the lines run. It is not a fact that he objected to the deed until the lines were run out. I told you why I did not make the deed that day. He gave reason why he would go back to Tennessee merely on the suggestion or agreement that I would have the lines run, and I had them run, but not before I had executed the deed. I did not have these lines run until after this case was started. The deed was made in August, and this case was started in January thereafter. In the consideration of this case, Mr. Hill was to have the crops — rent crops, he got it. He got the hay. There was not anything like a ton of hay fed up there. I had not bought any of it. I had not fed any of it, and I don't know if any of my people had fed any of it. I know the hay was up there in the barn in the fall of 1944. I know my tenants did not feed the hay. I am not going to say that Mr. Hill got any benefit of it.
Examination by the court: When Mr. Hill and I were negotiating for the purpose of this property, we agreed that I was selling and he was buying just the land. I was to have the timber — all but the four trees. He wanted something like four trees to make some posts. We were both mutually agreed as to that. I did not know that he claimed the timber until later on when he came and talked to his lawyer.
Recross examination: Mr. Hill said on direct examination that I did not reserve the timber and it was his now and he was going to have it. One of the reasons why I did not put it in the deed was because he said he did not want the timber. "I didn't thing *Page 766 
[think?] about it." I did not know he was going to meet up with you. Mr. Hill has said he did not want the timber. I did not think about the reservation. I told the court that Mr. Hill accepted the deed without reservation. I delivered the deed to the bank and it was mailed to Mr. Hill. I don't think Mr. Hill knew anything about the reservation, whether it was in or out of the deed, until after I had the money that he had placed in the bank. I placed the deed over at the bank. Mr. Hill was not here at the time. I got $2250, and $250 has since been paid. Mr. Hill was not present. I got the money before he knew the condition of the deed.
The judge overruled the plaintiff's motion for a new trial as amended and he excepted, assigning error both on the judgment refusing a new trial and on his exceptions pendente lite to the overruling of his demurrers to the answer as amended.