MINOR *et al. v.* FINCHER *et al.*

No. 16976. March 15, 1950. Rehearing denied March 27, 1950.

*Wyatt, Morgan & Sumner, W. J. Wallace,* and *Crawley & Crawley,* for plaintiffs in error.

*John H. McGehee, Martin, Snow & Grant, H. D. Russell,* and *Harris, Harris, Russell & Weaver,* contra.

HEAD, Justice. ■ (We will refer to the parties in this opinion as they appeared in the court below.) In ground one of the amended motion for new trial, it is contended that the verdict for the plaintiff was so excessive in amount as to evidence bias and prejudice on the part of the jury, was without competent evidence to support it, and was contrary to law and the

evidence. It is asserted that the evidence did not warrant a finding that there was a wilful and intentional trespass by the defendants, but demanded a finding to the contrary; and that the evidence on behalf of the plaintiff was too vague and indefinite to prove the amount of timber cut from the land she claimed, or the market value of the lumber manufactured from the timber. This ground of the amended motion may therefore be considered in connection with the general grounds.

The plaintiff relied upon the testimony of W. A. Gordy to establish the amount of timber alleged to have been cut by the defendants from Lot 263 in the First Land District of Upson County, to which the plaintiff claimed title. This witness testified: In the summer of 1946 he went with Mr. Burrus Smith to "stump cruise" timber cut from Lot 263. Mr. Smith pointed out the lot, and the witness cruised the timber cut from it. The witness was not able to cruise all of the timber because part of the land was grown up in briars. From the appearance of the stumps he saw, it looked like the timber had been cut two or three years; some few trees near the south line had been cut more recently than the others. His estimate did not include the trees not cruised, and, eliminating those entirely from his calculations, 165,000 feet of "lumber" had been cut.

It is clear from the testimony of the plaintiff (who was called for the purpose of cross-examination by the defendants) that she was not in actual possession of the land claimed by her, nor did she know of her own knowledge the location of the lines around Lot 263. She relied upon the testimony of Burrus Smith, who testified that he was the County Surveyor of Upson County, that he had surveyed three of the lines of Lot 263 in the First Land District of Upson County, and that he had made a plat from a survey made by him at that time. The witness Smith did not testify that the plat made by him was correct, nor does the plat contain a certificate by the surveyor that it is correct. The duly certified copies of the original surveys of Crawford and Upson Counties (from the office of the Secretary of State), which were admitted in evidence, disprove any contention that the surveyor's plat is correct. On cross-examination, the witness Smith described the method employed by him in locating the lines of Lot 263 in Upson County, in the follow-

ing language: "As to whether I ran the lines of 263 described in Mrs. Fincher's deed as 263 in Crawford County, there is no Lot 263 in Crawford County. Mrs. Fincher told me what lots she owned and got me to find the line of those lots. I went down to where the land is and started on the hedgerows, apparently recognized as the dividing line. Mr. Cochran pointed out the hedgerow between the two lots in question, then the other hedgerows are plain enough that nobody has to point them out." The "Mr. Cochran" referred to by the witness Smith did not testify, nor is there anything in the record to indicate the nature or source of Mr. Cochran's knowledge as to the location of land lines around Lot 263 in the first Land District of Upson County.

The witness Smith, under his own testimony, based his survey and the location of the lines of Lot 263 on information furnished by a person who did not testify, and whose source of knowledge was not proved. Smith's testimony, therefore, amounts to no more than hearsay and could have no probative value. While it is competent to establish boundaries by proof of traditionary reputation in the neighborhood, derived from ancient sources or from the declarations of persons since deceased who had peculiar means of knowing the reputation as to the boundary of a tract of land in an ancient day, present-day reputation would not be admissible. *Moore* v. *McAfee*, 151 *Ga.* 271 (6) (106 S. E. 274.)

In *McAfee* v. *Newberry*, 144 *Ga.* 473, 475 (87 S. E. 392), it was held: "Before reputation as to boundaries will be received in evidence, not only must it appear that the tradition is ancient and did not arise after any controversy respecting the title to the land, but the tradition must have something definite to which it can adhere, or be supported by corresponding enjoyment and acquiescence."

The present case falls within the rule stated by the Court of Appeals in *Patterson* v. *Baugh*, 56 *Ga. App.* 660 (193 S. E. 364), as follows: "A surveyor's plat, identified by a surveyor, was insufficient to establish the boundaries and location of a parcel of land where its correctness was based on the location of a lot corner, the location of which was not known to the surveyor but pointed out to him by living adjoining owners who did not testify."

There was no competent evidence upon which the jury could have based a finding as to the amount of timber cut from Lot 263, and the verdict was without evidence to support it.

■ In ground 2 it is urged that it was error to admit in evidence the quitclaim deed from Mrs. Alice S. Crandall to the plaintiff, dated March 17, 1940, conveying Land Lot 263 in the First Land District of Crawford County. The objection to the admission of the deed was that the plaintiff was seeking to recover for timber cut on Land Lot 263 in the First Land District of Upson County, while the deed sought to be introduced conveyed Land Lot 263 in the First Land District of Crawford County, and no proof had been offered sustaining the allegations of the plaintiff's amendment, to the effect that the deed, by reason of the mutual mistake of the grantor and the grantee, erroneously described the land as being located in Crawford County instead of Upson County.

It was not error for the court to admit this deed in evidence. By her amendment the plaintiff conceded that her deed did not describe any land in Upson County. This deed, however, formed the basis of her contention that she was the owner of Land Lot 263 in the First Land District of Upson County, and that by reason of a mutual mistake the land was described as being in Crawford County. Whether or not the plaintiff might establish her contentions as to the mistake by sufficient evidence, she had the right to offer the deed in evidence as the basis for her contentions.

■ Grounds 3 and 4 complain of portions of the charge of the court instructing the jury that there was no issue with respect to the title to Lot 263, on which the timber was alleged to have been cut, and directing the jury to find a verdict that the deed from Mrs. Crandall to the plaintiff should be reformed. It is insisted that, in order for her to be entitled to the relief of reformation, the burden rested upon the plaintiff to show by clear, unequivocal, and decisive evidence that in the preparation of the deed such a mistake had been made as may be relieved in equity, that the plaintiff had not been so negligent in the execution of the deed, or in observing any mistake appearing therein, as to estop her in equity to ask for reformation, and that she had not been guilty of laches in seeking reformation.

It is asserted that no evidence was introduced authorizing the relief of reformation, and that the issue should have been presented to the jury as to whether or not the plaintiff was the owner of the land at the time of the alleged cutting of timber by the defendants.

Counsel for the plaintiff insist that the only persons interested in the reformation are the plaintiff and the representative of the estate of Mrs. Crandall, and in a reply brief assert that a grantor and grantee may voluntarily reform a deed at any time. Generally, the parties may reform any writing or contract between them in any manner by agreement, so long as accrued rights of third persons are not disturbed; but the issue here is not one as to the right of a grantor and grantee to reform voluntarily a writing or contract between them. Reformation is sought in a court of equity, and must be governed by equitable rules.

Our Code, § 37-202, provides that the equitable power to relieve from mistake "shall be exercised with caution, and to justify it the evidence shall be clear, unequivocal, and decisive as to the mistake." The Code, § 38-205, provides that, "where the parties have reduced their contract, agreement, or stipulation to writing, and assented thereto, it is the best evidence of the same." This is a general rule of law. 45 Am. Jur., 649, § 112.

In *Trout* v. *Goodman*, 7 *Ga.* 383, 385 (4), it was held: "It is conceded that those who undertake to rectify an agreement, by showing a mistake, undertake a task of great difficulty. Lord Hardwicke said it required the strongest proof possible; and Lord Thurlow, that it must be irrefragable proof. Still, it cannot be denied that the power of reforming written contracts, on the ground of mistake, as well as fraud, constitutes a separate and distinct branch of Equity jurisprudence. It is one, however, which Chancery will exercise very sparingly, and only upon the clearest and most satisfactory proof of the intention of the parties."

In *Wyche* v. *Greene*, 11 *Ga.* 159, 160 (4), it was held: "As to the degree of proof that will be required, before relief will be granted against written instruments, no uniformly inflexible

rule has been prescribed. The mistake itself should be plain and made out by evidence clear of all reasonable doubt."

In *Ligon* v. *Rogers*, 12 *Ga.* 281, 287, 288, it was held: "The general rule is, that the written instrument furnishes better evidence of the deliberate intention of the parties to it than any parol evidence can supply; and the general rule must prevail, unless the complainant can bring his case within some one of the exceptions to that general rule, by showing by clear and satisfactory evidence, that either by accident, fraud, or mistake, the written instrument does not contain and express what the parties intended it should contain and express, at the time of its execution."

In *Wall* v. *Arrington*, 13 *Ga.* 89 (7), it was held: "A Court of Chancery, while it has authority, is very slow in exerting it to reform alleged mistakes in written instruments; and it requires the clearest and strongest evidence to establish the mistake. It is not sufficient, that there may be some reason to presume a mistake; the evidence must be clear, unequivocal, and decisive."

In *Helton* v. *Shellnut*, 186 *Ga.* 185 (4), (197 S. E. 287), it was held: "To authorize a verdict reforming a deed upon the ground of mutual mistake, the evidence, like the petition, should at least by inference show the particular mistake and illustrate how it occurred; and it is also the rule that 'the evidence shall be clear, unequivocal, and decisive as to the mistake.' " The same rule is stated in *Yablon* v. *Metropolitan Life Ins. Co.*, 200 *Ga.* 693, 704 (2), (38 S. E. 2d, 534).

In *Hill* v. *Agnew*, 202 *Ga.* 759, 760 (44 S. E. 2d, 653), it was said: "It appears without dispute from the plaintiff's own testimony that in his agreement with the defendant he bargained for the land without the timber, did not pay for the timber, and was not to have it. The defendant also testified that it was not his intention to sell the timber. . . Under the pleadings and the evidence, however, and especially the testimony of the defendant himself as to his reason or excuse for not inserting a reservation clause in the deed, the verdict in his favor for the affirmative equitable relief of reformation as sought by him was not demanded, and the court therefore erred in directing the jury to find in his favor for such relief."

This court has uniformly laid down the rule that, where reformation is sought upon the ground of mutual mistake, the mistake must be shown by evidence which is clear, unequivocal, and decisive.

In the present case, the verified petition could not have any effect as evidence. Mrs. Crandall was dead, and to permit the verified petition to be given the effect of evidence would violate the rule that, where one party is dead, the other is incompetent to testify in his own behalf. Code, § 38-1603 (1); *Kilpatrick* v. *Strozier*, 67 *Ga.* 247; *Sivell* v. *Hogan*, 115 *Ga.* 667 (42 S. E. 151); *Arnold* v. *Freeman*, 181 *Ga.* 654 (183 S. E. 811).

This is not a case to be decided independently of testimony, and based solely on the allegations of a grantee seeking reformation of a deed, and an answer by the representative of the grantor's estate, admitting the allegations of the petition. The plaintiff had taken the depositions of the executor of Mrs. Crandall's estate; and while the plaintiff did not offer these depositions in evidence, they were offered by the defendants. From the testimony of the executor it conclusively appears that he did not know whether or not the deed in question was prepared by him. He did not testify that he was present at the making of the contract between the parties, and he was not present at the execution of the deed. In place of supporting the contention of the plaintiff that the deed was executed through a mutual mistake, the executor's testimony shows that he has no knowledge of the contract between Mrs. Crandall and the plaintiff.

Under the pleadings and evidence offered, not only was a verdict for the plaintiff for reformation not demanded as a matter of law, but there was no evidence on the essential points as to the nature of the contract between the parties or how the mistake occurred, and a verdict for the plaintiff, even if returned by the jury without direction, would have been without competent evidence to support it. It was error for the court to direct a verdict for the plaintiff for reformation.

In so far as the defendants seek to rely upon their contention in their amended motion for new trial that the plaintiff was estopped by laches from obtaining the relief of reformation, such contention is without merit. The defense of laches was not pleaded by the defendants, nor was the issue properly made

upon the trial of the case. To avail himself of the defense of laches, the party relying thereon must plead it. *Hunnicutt* v. *Archer*, 163 *Ga.* 868 (137 S. E. 253).

■ Ground 5 contends that it was error for the court to instruct the jury to find against the affidavit of forgery filed by the defendants. It is insisted that the facts and circumstances shown by the evidence were sufficient to authorize an inference that the deed was a forgery, and this issue should have been submitted to the jury.

It does not appear from this ground, nor does it otherwise appear from the record, that there was any agreement by counsel that the affidavit of forgery be tried in connection with the plaintiff's amendment seeking reformation of her deed. Our Code, § 29-415, requires that, when an affidavit of forgery is filed, the court "shall" arrest the cause and require an issue to be made and tried as to the genuineness of the alleged deed. *Hollis* v. *Stevens*, 36 *Ga.* 463; *Webb* v. *Till*, 134 *Ga.* 388, 390 (67 S. E. 1034).

The sole issue made by this ground of the motion for new trial, however, is whether or not the court erred in directing a verdict against the affidavit of forgery. The execution of the deed was proved by the testimony of the two subscribing witnesses, and their testimony is positive and unequivocal, and to the effect that Mrs. Crandall executed the deed in the presence of both witnesses, on or about March 17, 1940. Circumstances which might have been considered by the jury in determining whether or not the plaintiff had been diligent in discovering an alleged error in the description contained in the deed are insufficient to contradict the positive testimony of the subscribing witnesses that Mrs. Crandall executed the deed in their presence. No error is shown in the direction of the verdict against the affidavit of forgery.

■ In ground 6 it is contended that the court erred in giving the following charge: "I charge you, gentlemen, in this case, the plaintiff has brought her suit against L. L. Minor and A. C. Rogers Jr., jointly, contending that both defendants are jointly liable because Minor directed Rogers to cut timber on Land Lot 263 and Rogers carried out these directions. I charge you, you can't bring in a verdict against Minor alone, but if you bring a

verdict for plaintiff, it must be against both defendants, this is because Minor does not reside in this county, and this (court has) jurisdiction over Minor only if he and Rogers were joint wrongdoers."

It is insisted that this charge was calculated to cause the jury to reach a verdict against the defendant Rogers, regardless of what the evidence showed as to his liability, in order to retain jurisdiction of Minor, the nonresident defendant. It is contended that the charge was erroneous as an abstract principle of law, and was not adjusted to the pleadings and the evidence.

While it has been held in the first division of this opinion that there was no competent evidence to support a verdict against either of the defendants, the trial judge may give a charge similar to that complained of in this ground on a retrial of the case, and for this reason we rule on the assignments of error in this ground.

The Code, § 105-2011, provides: "Where several trespassers are sued jointly, the plaintiff may recover, against all, damages for the greatest injury done by either. The jury may, in their verdict, specify the particular damages to be recovered of each, and judgment in such case must be entered severally." As stated by this Code section, the jury might determine that the plaintiff was entitled to recover against both defendants for the greatest injury done by either, or the jury might specify the damages to be recovered of each defendant, under the evidence. *Hay* v. *Collins*, 118 *Ga.* 243 (44 S. E. 1002); *Ivey* v. *Cowart*, 124 *Ga.* 159 (52 S. E. 436); *Gazaway* v. *Nicholson*, 190 *Ga.* 345, 348 (9 S. E. 2d, 154). In an action against joint trespassers there may be a recovery against only one of the defendants, if that defendant resides within the jurisdiction of the court. *Fender* v. *Gardner*, 153 *Ga.* 460 (112 S. E. 368).

In so far as the charge complained of instructed the jury that they could not return a verdict against the nonresident defendant unless they found against the resident defendant, the charge was not error. It was error, however, to instruct the jury that, in the event they returned a verdict for the plaintiff, "it must be against both defendants." Such charge was erroneous because the jury under proper evidence might return a verdict for a plaintiff against a resident defendant alone, without returning a verdict

against the nonresident defendant joined in the action.

■ Ground 7 complains because the court charged the jury that, in the event they returned a verdict for damages, they were not confined to the value of the timber on the date the plaintiff filed her suit, since the plaintiff had exercised her right of election as provided by law to recover the highest value of lumber, as shown by the evidence, of the grade removed from her land, between the date of the filing of the suit and the date of the trial. It is contended that this charge was not correct as an abstract principle of law; was not properly adjusted to the pleadings and the evidence, and that the court erroneously charged the measure of damages applicable to trover suits in general, and failed to charge the measure of damages set forth by the Code, § 105-2013, which was the correct measure of damages.

Counsel for the plaintiff contend that her action was one in trover. Counsel for the defendants contend that the action was brought under the Code, § 105-2013. A consideration of this ground of the motion for new trial does not require any determination as to the nature of the plaintiff's action. Whether in trover or trespass, the measure of damages applicable thereto is fixed by the Code, § 105-2013, and the contention that the court charged the wrong measure of damages is meritorious.

Section 105-2013 provides: "Where plaintiff recovers for timber cut and carried away, the measure of damage is: 1. Where defendant is a wilful trespasser, the full value of the property at the time and place of demand or suit, without deduction for his labor or expense. 2. Where defendant is an unintentional or innocent trespasser, or innocent purchaser from such trespasser, the value at the time of conversion, less the value he or his vendor added to the property. 3. Where defendant is a purchaser without notice from a wilful trespasser, the value at the time of such purchase."

This Code section was taken from the decision of this court in *Parker* v. *Waycross & Florida Railroad Co.*, 81 *Ga.* 387 (8 S. E. 871) (codified as section 3018 of the Code of 1895, and section 4515 of the Code of 1910). Parker sued the railroad company in two counts, one in trover, and the other in trespass. The measure of damages stated in the opinion, and included in

subsequent Codes, was taken by this court from a decision by the Supreme Court of the United States in the case of Wooden-Ware Co., v. United States, 106 U. S. 432 (1 Sup. Ct. 398, 27 L. ed. 230), which was an action in the nature of trover, brought by the United States for the value of 242 cords of ash timber cut and removed from public lands, knowingly and wrongfully, by the Indians, and sold to the defendant. It therefore appears that the measure of damages now fixed by the Code, § 105-2013, was adopted by this court in a trover action from a decision of the Supreme Court of the United States in a similar action. The fact that the present Code section came into existence in our Code of laws through an opinion of this court gives the section no less effect than a legislative enactment. *Central* of *Ga. Railway Co.*, v. *State of Georgia*, 104 *Ga.* 831 (31 S. E. 531).

The case of *Milltown Lumber Co.* v. *Carter*, 5 *Ga. App.* 344 (63 S. E. 270), is cited as authority for the contention that the plaintiff in the present case could recover in damages under the rule generally applicable in trover actions, and stated in the Code, § 107-103, as follows: "In estimating the value of personalty unlawfully detained, the plaintiff may recover the highest amount which he shall prove between the time of the conversion and the trial."

The rule stated at page 353 in the *Milltown* case is in conflict with the rule laid down by this court in *Parker* v. *Waycross & Florida Railroad Co.*, supra, which is now Code § 105-2013. The authorities cited in the *Milltown* case (*Jaques* v. *Stewart*, 81 *Ga.* 81, 6 S. E. 815, and *Bank of Blakely* v. *Cobb*, 5 *Ga. App.* 289, 63 S. E. 24), do not support the rule stated in the *Milltown* case. All decisions of the Court of Appeals subsequent to the *Milltown* case, which have applied the incorrect rule therein set out, are disapproved.

The language of § 105-2013, fixing the measure of damages applicable "where plaintiff recovers for timber cut and carried away," could not be more specific or definite; and this Code section states the correct measure of damages in all actions, whether in trover or trespass, for timber cut and carried away. Compare: *Lawson* v. *Branch*, 191 *Ga.* 311 (12 S. E. 2d, 641); *Tennessee, Alabama & Georgia Railway Co.* v. *Zugar*, 193 *Ga.* 386 (18 S. E. 2d, 758); *Taylor* v. *Hammack*, 61 *Ga. App.* 640 (7

734

S. E. 2d, 200); *DeBardelaben* v. *Coleman,* 74 *Ga. App.* 261 (39 S. E. 2d, 589).

For the reasons stated in divisions 1, 3, and 5, and in this division of the opinion, the court erred in overruling the motion for new trial.

*Judgment reversed. All the Justices concur. Duckworth, C. J. concurs in the judgment of reversal, but dissents from the ruling in division 3 of the opinion.*