37168.   HIGHTOWER *et al. v.* WILLIAMS.

DECIDED JUNE 23, 1958—REHEARING DENIED JULY 30, 1958.

*Stone & Stone, Jesse G. Bowles,* for plaintiffs in error.

*Custer & Kirbo, Vance Custer, Jas. W. Bonner,* contra.

CARLISLE, Judge.   H. E. Hightower, one of the defendants herein, executed a timber lease to Burgin Lumber Company, his codefendant, covering a described tract of land lying in lots Nos. 388, 405, 410 and fractional lot 425 in the 26th District of Early County, Georgia.   The north boundary of the tract was described as being a line two and one-half chains south of and parallel to the north boundary of fractional lot 425, lots 410 and 405 with the exception of a square tract of 10 acres positioned roughly in the northeast corner of lot 405, the location and boundaries of which are not in dispute in this case.   The lands north of this boundary line and the 10-acre tract in the northeast corner of lot 405 are the lands of John H. Williams, Sr., the plaintiff.   Burgin Lumber Company entered onto the premises and proceeded to cut timber up to a fence running east and west across the northern boundary of the tract.   Williams sued Hightower and Burgin Lumber Company for damages to recover the value of the timber cut and carried away from the strip of land two and one-half chains in width just south of the fence and running across the northern portion of fractional lot 425 and lots 410 and 405.   The defendants contended that the fence was the property line, and on the trial of the case, the sole issue was whether the fence was erected along the property line two and one-half chains south of the land-lot line or whether it lay along the land-lot lines two and one-half chains north of the property line.   The jury found for the plaintiff, thus sustaining his contention that the fence was erected on the land-lot line, and the sole exception here is whether the evidence authorized this verdict.   No issue was made

in the trial of the case as to title, it being conceded by both parties that they held paper title to their respective tracts of land.

The plaintiff testified that he had his property surveyed in 1924, shortly after he purchased it, by a Mr. Church who is now dead, and that Mr. Church's survey showed that the two and one-half chain strip lay to the south of the fence. The other evidence in the record, including the plats introduced, shows that the tract of land in dispute is a relatively narrow strip of land, as stated above, across the northern edges of fractional lot 425 and lots 410 and 405. These lots lie in that order from west to east, fractional lot 425 being bounded on the west by the Chattahoochee River and lot 405 being bounded on the east by lot No. 388, fractional lot 425, and lots 411, 404 and 389 lie just to the north of the aforementioned lots and are in that order from west to east. Lot No. 379 lies just to the east of lot No. 388, and its northern boundary separating it from lot No. 378 just to the north is a continuation of the line which is also the northern boundary of fractional lot 425 and lots 410, 405 and 388. Other witnesses testified as to the existence and location of the corner between lots 389, 388, 378 and 379 and that there was a fence, and there still is a fence, which has been recognized as the north original line of lot No. 379 ever since a great number of years, and they testified that there were certain markers on this line that had been there ever since they could remember. While some of the evidence thus introduced may have been subject to the objection that it was hearsay, and based on present-day reputation, it does not appear that any objection was interposed on this ground as to any of the evidence, and certainly some of the evidence of the witnesses shows that their testimony as to the location of the land-lot line was based on traditionary reputation in the neighborhood derived from ancient sources or from declarations of persons since deceased who had peculiar means of knowing the reputation as to the location of the line, and as such was of sufficient probative value to sustain the verdict for the plaintiff. See *Moore* v. *McAfee*, 151 *Ga.* 270 (6) (106 S. E. 274); *Minor* v. *Fincher*, 206 *Ga.* 721, 725 (58 S. E. 2d 389); *Willis Lumber Co.* v. *Roddenbery*, 88 *Ga. App.* 352, 359 (77 S. E. 2d 110).

All of the evidence of the surveyors who surveyed the line for

the plaintiff and for the defendant shows that they started their survey at the corner between lots 378, 379, 388 and 389 where they found an ancient marker, and that they lined up on the fence and ran the lot line out to the river some 11,000 feet, based on that alignment. All of the testimony showed that the fence was on or near the line thus run, it being, according to one of the plats, some 20 feet north of the line at one point but closer to the line at all other points. In view of all of the evidence, we cannot say that the jury were not authorized to find that the fence was on or approximately on the land-lot line as contended by the plaintiff, and that, consequently, the two and one-half chain strip lying to the south of the fence was the plaintiff's land and not the defendant Hightower's and thus to award damages to the plaintiff for the timber which it was agreed had been cut off of the strip by the defendants.

There being no dispute in this case as to the amount of timber cut, or as to the amount of the verdict, and no error of law appearing, the trial court did not err in denying the motion for new trial.

*Judgment affirmed. Gardner, P. J., and Townsend, J., concur.*